## EL DORADO INDEPENDENT SCHOOL DIST. et al. v. TISDALE et al.
### (No. 1065–4736.)

Commission of Appeals of Texas, Section A. Feb. 29, 1928.

**1. Schools and school districts ⊚⇒10—Establishment and maintenance of schools is state object, power to do so is governmental, and considerable discretion is vested in Legislature (Const. art. 7, § 1).**

Under Const. art. 7, § 1, providing that Legislature shall establish and provide for support and maintenance of public free schools, such establishment and maintenance is state object, power to effect it is governmental, and considerable latitude is vested in Legislature.

**2. Constitutional law ⊚⇒60—Legislative powers to provide for formation of school districts, management, taxes, and assessment and collection of taxes, are continuing and nondelegable (Const. art. 7, § 3).**

Powers of Legislature, under Const. art. 7, § 3, to provide for formation of school districts by general or special law, for management and control of schools of districts, for local building tax and maintenance tax, and for assessment and collection of taxes by district, are continuing and nondelegable.

**3. Constitutional law ⊚⇒120—Schools and school districts ⊚⇒22—School district has no contract rights in laws fixing boundaries, and cannot assert that statute reducing area violated its contract rights (13 Gammel's Laws, p. 478; 19 Gammel's Laws, p. 131; 20 Gammel's Laws, p. 199; 22 Gammel's Laws, p. 435).**

El Dorado independent school district has no contract rights in 13 Gammel's Laws, p. 478, under which district was incorporated, under 19

Gammel's Laws, p. 131, and 20 Gammel's Laws, p. 199, changing its boundaries, and cannot assert that 22 Gammel's Laws, p. 435, reducing its area, violated obligation of contracts as to it.

**4. Constitutional law ⊚⇒42—School district cannot assert that statute reducing area violated obligation of contracts on behalf of constituents or creditors (13 Gammel's Laws, p. 478; 19 Gammel's Laws, p. 131; 20 Gammel's Laws, p. 199; 22 Gammel's Laws, p. 435).**

School district incorporated and existing under 13 Gammel's Laws, p. 478, 19 Gammel's Laws, p. 131, and 20 Gammel's Laws, p. 199, has no right to assert that 22 Gammel's Laws, p. 435, reducing its area, violated obligation of contracts on behalf of either constituents or creditors.

**5. Constitutional law ⊚⇒143—School district bondholder might not complain of statute reducing area of district as violating contract rights, where remaining area would raise sufficient tax to satisfy claims (13 Gammel's Laws, p. 478; 19 Gammel's Laws, p. 131; 20 Gammel's Laws, p. 199; 22 Gammel's Laws, p. 435).**

Bondholder of school district organized and existing under 13 Gammel's Laws, p. 478, 19 Gammel's Laws, p. 131, and 20 Gammel's Laws, p. 199, might not complain of 22 Gammel's Laws, p. 435, reducing area of school district, as violating his contract rights, where territory remaining was sufficient to pay requirements of district.

**6. Constitutional law ⊚⇒137—Statute reducing area of school district held not to violate contracts as to taxpayers (13 Gammel's Laws, p. 478; 19 Gammel's Laws, p. 131; 20 Gammel's Laws, p. 199; 22 Gammel's Laws, p. 435).**

22 Gammel's Laws, p. 435, reducing area of school district incorporated and existing under 13 Gammel's Laws, p. 478, 19 Gammel's Laws, p. 131, and 20 Gammel's Laws, p. 199, *held* not to violate obligation of contracts as to taxpayers within reduced district, in view of manner in which they had voted taxes to pay bonds, under Const. art. 7, § 3, before amendment of 1909 and Rev. St. 1925, art. 2785.

**7. Schools and school districts ⊚⇒103(I) — School district might not assess land or personalty no longer within district, nor enforce assessment thereon (13 Gammel's Laws, p. 478; 19 Gammel's Laws, p. 131; 20 Gammel's Laws, p. 199; 22 Gammel's Laws, p. 435).**

School district organized and existing under 13 Gammel's Laws, p. 478, 19 Gammel's Laws, p. 131, and 20 Gammel's Laws, p. 199, might not assess land or personalty no longer within district, under 22 Gammel's Laws, p. 435, reducing area of district, nor enforce assessment on such property.

Error to Court of Civil Appeals of Third Supreme Judicial District.

Application by Joe Tisdale and others for a temporary injunction against the El Dorado Independent School District and others. Order denying the injunction was reversed by the Court of Civil Appeals, and judgment

there rendered (287 S. W. 147), and defendants bring error. Affirmed.

Collins, Jackson & Sedberry and Thomas & Lewis, all of San Angelo, for plaintiffs in error.

Hill, Neill & Hill, of San Angelo, for defendants in error.

### Statement of the Case.

NICKELS, J. El Dorado independent school district was incorporated by Act of the Thirtieth Legislature 1907 (13 Gammel's Laws, p. 478, c. 47), with defined boundaries. Boundaries were changed by legislative action, successively, in 1919, 1921, and 1925 (19 Gammel's Laws, c. 39, p. 131; 20 Gammel's Laws, c. 66, p. 199; 22 Gammel's Laws, c. 149, p. 435).

Upon election held, with favorable results, within the original territory in July, 1909, "schoolhouse" bonds aggregating $20,000, principal, were issued and sold. Of that issue, bonds aggregating about $9,000, principal, are now (and, at the times involved, were) outstanding.

In 1921 an election held within the district as then defined resulted in authority to levy and collect ad valorem tax of 50 cents on the $100 valuation "upon all taxable property in said district for the support and maintenance of the public free schools of said district" and to take care of the required interest and sinking fund in respect to the 1909 bond issue.

January 19, 1925, Spencer and more than 25 other petitioners applied to the board of trustees for an order for an "election in said district" for the purpose of determining whether serial schoolhouse bonds "to the amount of $45,000.00" (bearing interest at 5½ per cent. per annum, payable in one to forty years) should be issued and whether "a tax sufficient to pay the current interest on said bonds * * * and the principal thereof as the same becomes due" should be provided for. On the same day an order was made calling the election to be held February 19, 1925—the recital of purposes following the language of the petition. The election was held on the day named therefor; on the same day returns were canvassed and the result (favorable to the propositions submitted) was declared. On the same day an order was made for the issuance and sale of the bonds. The provision (then made) for the tax was that:

"While said bonds, or any of them, are outstanding and unpaid, there shall be annually levied, assessed and collected, * * * a tax upon all the taxable property in said El Dorado independent school district, sufficient to pay the current interest thereon and create a sinking fund sufficient to pay each installment of the principal as the same becomes due, and to provide the requisite sinking fund for the first year there is hereby levied a tax of and at the rate of 24 cents on each $100 valuation of taxable property in said school district and while said bonds, or any of them, are outstanding and unpaid, a tax for each year at a rate, from year to year, as will be ample and sufficient to provide funds to pay the current interest * * * and to provide the necessary sinking fund * * * shall be and is hereby levied for each year," etc.

February 23, 1925, according to minutes of the board, Brown-Crummer Investment Company submitted an offer to buy the bonds. The "bid" recites:

"This offer is for immediate acceptance, and provided further that, prior to the delivery of the above bonds to us and payment made therefor, you are to furnish us with a complete certified copy of transcript of proceedings evidencing the legality thereof to the satisfaction of Clay & Dillon, attorneys."

The board declared this the best "bid" and adopted a resolution that:

It "is hereby accepted and * * * the accepted offer * * * is the contract between the city [meaning district] and said Brown-Crummer Investment Company."

It does not appear when, if ever, the bond record, etc., was submitted to the Attorney General for examination and approval or to the comptroller for registration, etc., or when, if ever, the bonds were delivered to Brown-Crummer Investment Company, or other purchaser.

The proceedings thus far recited were had while the properties of Tisdale et al., were within the territory of the district. By the 1925 act (effective March 6, 1925) those properties were left outside that territory.

April 4, 1925, by order, the board of trustees of the district levied taxes as follows: 40 cents on the $100 of value for maintenance, 10 cents for the 1909 bond issue, interest, and sinking fund, and 25 cents for the 1925 bond issue, interest, and sinking fund.

When the 1925 act became effective and when the tax levy (April 4, 1925) was made, the properties of Tisdale et al. (consisting of lands and personalty) had not been assessed for taxation by the district; that followed in October, 1925, etc.

The district, through its officers or agents, demanded the tax and held the claim therefor against those properties. Tisdale et al. brought suit, averring locii of their properties beyond the territory of the district with consequent threat, etc., of being denied process of law, equality of law, etc., through attempts of the district to tax extraterritorially. There is prayer for judgment setting aside the action of the board made in the attempt to assess, etc., their properties, canceling the purported assessment thereof, and inhibiting collection and attempts to collect the taxes. Injunction pendente lite was asked.

Upon presentation of the latter prayer, and

after a hearing, that relief was denied. Upon appeal of Tisdale et al. error was found in that action and the order was reversed and one rendered granting the temporary relief prayed. (Tex. Civ. App.) 287 S. W. 147. The questions advanced to the Supreme Court will appear in the discussion below.

It will be understood, of course, that we have merely stated the prima facie effect of the proceedings mentioned. There is reason to doubt the effectiveness, in truth, of some of the purported entries, etc., but this presents a problem to be solved upon final trial.

### Opinion.

[1] 1. In constitutional terms (section 1, art. 7) it is commanded that the Legislature shall "establish and make suitable provision for the support and maintenance of an efficient system of public free schools." The object, manifestly, is a state object; its achievement, as plainly, is to be in consequence of user of state power—governmental in se. Discretion of considerable latitude is obvious.

[2] Some accomplishing means are provided in context of the requirement. Those of present relevancy are to be found in section 3, art. 7. It is there said the Legislature may provide: (a) "For the formation of school districts by general or special law"; (b) "for the management and control of the public school or schools of such district"; (c) for local building tax and maintenance tax, within a certain aggregate limit, upon authorizing vote of the "qualified taxpaying voters of the district"; and (d) "for the assessment and collection of taxes" by the district. These powers are continuing, and in nature they are such as not to be delegable.

[3, 4] Corporate life of the defendant district has that source, and by laws proceeding therefrom its conduct has ever been and is yet circumscribed. Its implied claim of a contract right in the laws of its creation and earlier circumscription is without logical support, as is its claim of right to assert a violated contract right for its constituents or creditors. Hunter v. Pittsburg, 207 U. S. 161, 28 S. Ct. 40, 52 L. Ed. 151; City of Trenton v. New Jersey, 262 U. S. 182, 43 S. Ct. 534, 67 L. Ed. 937, 29 A. L. R. 1471; Attorney General ex rel. Kies v. Lowrey, 199 U. S. 233, 26 S. Ct. 27, 50 L. Ed. 167; Laramie County v. Albany County, 92 U. S. 307, 23 L. Ed. 552.

[5] Whether in fact any creditor has a contract whose impairment may be a result of diminution of territory of the district is questionable, for whatever agreement may have been made included notice of the existence and nature of the legislative powers mentioned. But if the concession be made arguendo that some such contract may exist, the fact remains that (for aught that appears) a sufficient tax can be raised (within constitutional limits) from property within the diminished territory to satisfy its require-

ments. If that be the condition in point of fact, it is difficult to perceive ground for objection by the contractor.

[6] Those taxpayers whose property is within the narrowed boundaries, and whose supposed complaint the district assumes to present, are thus situated: (a) When they voted in 1909, and again in 1925, they had knowledge of the powers of the Legislature; (b) they voted (rather the requisite majority of all taxpayers voted) to authorize such a tax as would be necessary to pay interest on the bonds and to retire them in order, provided only that the measure of the tax should not exceed 25 cents on each $100 of valuation in respect to the 1909 bonds (section 3, art. 7, before the 1909 amendment) and —— cents on each $100 of valuation in respect to the 1925 bonds. If not directly shown, it is fairly inferable that the tax thus authorized is now and will continue to be ample, as applied to property within the newly defined district, to retire the bonds and pay the interest thereon as it accrues. In this connection we note that no rate was named in the order for the 1925 election, nor provision made that the rate should not exceed that previously named as maximum in the law, as apparently required in article 2785, R. S. 1925; on the contrary, the election petition and order called, merely, for "a tax sufficient to pay the current interest * * * and the principal * * * as the same becomes due," and the order for issuance of the bonds (except for the year of 1925) had a like indefinite recital about the amount of levy. So long as the levy needed for the bonds is within the rates authorized by vote, the burden will continue to be that upon whose assumption the taxpayers expressed their will in 1909 and again in 1925.

We do not mean to hold that bondholders (or other taxpayers) do not have or may not in the future acquire practically justiciable rights against the exclusion from the district of the properties of defendants in error. We have commented upon their possibilities merely by way of negativing present showing of palpable unconstitutionality in the 1925 act and of right in the plaintiffs in error to attack the statute on those grounds. "Laws frequently are enforced which the court recognizes as possibly or probably invalid if attacked by a different interest or in a different way." Quong Wing v. Kirkendall, 223 U. S. 59, 64, 32 S. Ct. 192, 193 (56 L. Ed. 350); Weaver v. Palmer Bros. Co., 270 U. S. 402, 46 S. Ct. 320, 70 L. Ed. 654, 658.

[7] Naturally, this municipal corporation (absent expressed declaration of authority therefor) cannot exert its powers extraterritorially. The 1925 statute (prima facie valid at least) cut off authority to make assessments on property beyond its limits and, in turn, to enforce the charges thus fixed. See authorities cited in the opinion of the Court

of Civil Appeals. See Blewitt v. Megargel, etc., Dist. (Tex. Com. App.) 285 S. W. 271.

We recommend that the judgment of the Court of Civil Appeals, granting the temporary injunctive relief prayed, be affirmed.

CURETON, C. J. Judgment of the Court of Civil Appeals affirmed.