## LYFORD INDEPENDENT SCHOOL DIST. et al. v. WILLAMAR INDEPENDENT SCHOOL DIST. et al.

### No. 1241–5278.

Commission of Appeals of Texas, Section A.
Jan. 21, 1931.

Gause & Kirkpatrick, of Mercedes, for plaintiffs in error.

B. S. Wright and Raymond E. Decker, both of Raymondville, for defendants in error.

CRITZ, J.

This suit was filed in the district court of Willacy county, Tex., by Lyford independent school district et al., hereinafter designated the Lyford district, against the Willamar independent school district et al. hereinafter designated the Willamar district. It is shown by the record that the Lyford district in Willacy county was created in 1921 by special act, chapter 12 of the 37th Legislature, with defined boundaries, which are stated in the petition; that on or about March 16, 1925, the date when the Willamar district, also of said county, was created, by special act of the Legislature, said Lyford district had a valid outstanding bonded and other indebtedness of $56,353.58; that on March 16, 1925, by special act, chapter 84 of the 39th Legislature, the Willamar district was created with defined boundaries, which boundaries included a portion of the territory of the Lyford district; that this territory taken from the Lyford district and included in the Willamar district amounted to 13.27 per centum of the Lyford district; that since said act creating the Willamar district, the latter district has undertaken to control said overlapped territory, but refuses to pay any part of the indebtedness of the Lyford district. The act creating the Willamar district contains the following provision:

"Sec. 4. That Willamar Independent School District as created by this Act shall pay its share of any indebtedness now due by the Lyford Independent School District to be prorated according to the assessed value of that part of this district which is a part of said Lyford district * * * for the year 1924."

The case was tried in the district court on an agreed statement of facts and judgment entered holding the act creating the new Willamar district void. The trial court also enjoined the new Willamar district from collecting taxes in the segregated part of the Lyford district, and from collecting any available school funds due such segregated territory, and also rendered judgment against the Willamar district for $1,008, being money already collected by the Willamar district from the available school funds for pupils residing in the segregated territory. The Willamar district appealed from this judgment to the Court of Civil Appeals for the Fourth District at San Antonio, which court reversed the judgment of the trial court and remanded the cause to that court with instructions on another trial to ascertain the indebtedness of the new district to the old district, and then provide for the collection of the same. 8 S.W.(2d) 239. The case is before the Supreme Court on writ of error granted on application of the Lyford district.

The Lyford district attacks the constitutionality of the act creating the new Willamar district principally upon the ground that the act creating the Willamar district is void because it attempts to impose upon that district a part of the bonded indebtedness of the Lyford district by fiat of the Legislature without providing for an election or vote of the people thereon in violation of section 3 of article 7 of our State Constitution, citing in support of such contention Millhollon v. Stanton Ind. School Dist. (Tex. Com. App.) 231 S. W. 332, and Burns v. Dilley County Line Ind. School Dist. (Tex. Com. App.) 295 S. W. 1091.

The act creating the Lyford district contains, among other things, the following provision:

"Sec. 4. * * * and said board of trustees shall assume control of all grounds, property, building money, etc. that may belong to the Lyford Independent School District at the time this Act goes into effect, and shall assume all contracts or outstanding debts including bonded indebtedness against the district."

The original Lyford district, on the date of the passage of the act of the 37th Legislature creating the new Lyford District, and enlarging its territory, had two valid, outstanding bonded indebtednesses aggregating $8,000.

It will be noted that section 4 of the act creating the new Lyford district provides that the district therein created shall assume all contracts or outstanding debts, including bonded indebtedness against the district.

If the act creating the Willamar district was unconstitutional and void, at the time of its enactment, on account of section 4 of that act, then the act creating the Lyford district was also unconstitutional and void for the same reason, and we have in this suit, to use a homely and trite expression, "the pot calling the kettle black."

The several assignments present various very difficult and perplexing constitutional questions, as disclosed by the statement above, and the opinion of the Court of Civil Appeals. However, the view we take of this case under the law as it now exists makes it improper and unnecessary for us to pass upon any of these questions.

It appears that since the passage of both the above acts the Legislature of this state has enacted a validating act. The act in question is S. B. 384, c. 298, p. 666, General Laws Regular Session 41st Legislature (Vernon's Ann. St. art. 2802a). Omitting formal parts, this act reads as follows:

"That in all cases where, with the intention of organizing an Independent School District, the Legislature of this State enacted a law prior to January 20, 1927, describing and designating a contiguous area of territory as an Independent School District and a Board of Trustees, chosen by the inhabitants of said territory has managed and governed the school affairs of such territory, conducted schools therein, levied taxes and called and held an election for voting upon the issuance of bonds for school purposes, and a majority of the qualified tax paying voters have voted in favor of such bonds and the bonds have been sold and the proceeds received by said District, then each such contiguous area of territory is hereby recognized and declared to be a validly organized Independent School District of this State for the purpose of establishing and maintaining public schools. The Board of Trustees acting for each such district is hereby declared to be the duly constituted governing body thereof and shall have the powers conferred by the laws of this State applicable to such Districts, and all proceedings and acts thereof heretofore taken and had as authorized by the school laws of this State are validated and all bonds so authorized and sold and now outstanding are hereby declared to be the valid obligations of each such school District.

"All common school districts, consolidated districts, rural high school districts and independent school districts, whether created by general or special law in this State, heretofore laid out and attempted to be established by the proper officers of any county or by the Legislature of the State of Texas, and heretofore recognized by either State or county authorities as school districts are hereby validated in all respects as though they had been duly and legally established in the first instance."

To our minds the above act is amply sufficient in its terms to validate both the Willamar and the Lyford districts, even though it be conceded that they were both invalid at the time of their creation, a question not now

passed on. The validating act in question is not a special but a general law, and the power of the Legislature to enact curative statutes of this kind is no longer an open question in this state. Tom Green County v. Moody, 116 Tex. 299, 289 S. W. 381; Anderson County Road District v. Pollard, 116 Tex. 547, 296 S. W. 1062; Western Union Tel. Co. v. Wichita County Imp. Dist. (Tex. Com. App.) 30 S.W. (2d) 301. Also it is settled that a curative statute enacted by the Legislature and becoming effective during the pendency of litigation or even during the pendency of a motion for rehearing in the Supreme Court has effect to cure the defect to which it applies the same as if the act had become effective before the institution of the suit. Hunt v. Atkinson (Tex. Com. App.) 17 S.W.(2d) 780.

We further hold that the fact that the Lyford district had an outstanding bonded indebtedness at the time the Willamar district was created and a part of the territory of the Lyford district detached from the Lyford district and included in the Willamar district cannot have effect to make the above quoted validating act inapplicable to the two districts here involved. We presume from the record that all properties originally owned by the Lyford district were left situated in such district as changed by the act creating the Willamar district, and there is no dispute between the two districts as to the ownership of these properties.

◼ It is settled that a school district has no contract or vested right in laws fixing the boundaries, and cannot assert that a statute reducing its area violates any contract right. El Dorado Independent School District v. Tisdale (Tex. Com. App.) 3 S.W.(2d) 420. Of course, a case where the territory of a district has been reduced to a point where its obligations are impaired or endangered would present a different question. No such question is presented here, as there is no contention made that the Lyford district is not able to meet its lawful indebtednesses with a tax rate within statutory and constitutional limitations.

In the case of El Dorado Independent School District v. Tisdale, supra, it is shown by the opinion that the district was incorporated by the act of the 30th Legislature, 1907, with defined boundaries. These boundaries were subsequently changed by successive acts passed in 1919, 1921, and 1925, respectively.

◼ In 1909 the district voted, issued, and sold bonds aggregating $20,000, and $9,000 of this amount was outstanding at the time of the suit. In 1921 the district voted a tax of 50 cents to maintain its schools and take care of the interest and sinking fund on its outstanding bonds. In 1925 the district voted, issued, and sold its bonds in the sum of $45,000. These bonds appear to have been sold on February 23, 1925. Up to this point the prop-

erties of Tisdale et al. were within and a part of the district. By the 1925 act, which became effective March 6, 1925, the properties of Tisdale et al. were detached from and left outside the district. Under this record this section of the commission speaking through Judge Nickels held that the properties detached from the district and left outside its boundaries by an act becoming effective after the bonds were voted and sold had effect to relieve such properties so detached and left outside the district from the taxes of the district. The Supreme Court entered the judgment there recommended when it could not have done so had it disagreed with the holding. We therefore hold that the mere fact that the act detached territory from the Lyford district while it had an outstanding bonded indebtedness would not affect the validity of the act, where there is sufficient property left to pay such indebtedness by a tax levy within constitutional and statutory limitations.

◼ Finally we call attention to H. B. 99, chapter 84, p. 228, Acts First Called Session, 40th Legislature, 1927 (Vernon's Ann. Civ. St. art. 2742b). We particularly call attention to sections 9, 10, 11, and 12 of said act.

Under section 9 it is provided that where the boundaries of any school district having an outstanding bonded indebtedness have been changed or its territory divided, etc., it is the duty of the county board of trustees to make a just and equitable adjustment of the properties and indebtednesses involved. Section 10 of the act provides means and methods of carrying into effect the orders of the county school board made under section 9. Section 11 provides for taking care of indebtednesses in cases where necessary refunding bonds are voted down, or the county board is otherwise unable to arrange an adjustment of such matters. Section 12 is general in its provisions and gives the board power to arrange such matters in any legal and equitable manner. .

We do not hold that there are any equities to be adjusted between the two districts here involved, and we do not attempt to express an opinion as to that; but we do hold that in case such equities do exist the above act is sufficient in its terms and language to include cases where the changes have come as a result of a direct legislative act, as well as changes made by the County School Board itself.

We therefore recommend that the judgments of the Court of Civil Appeals and of the district court be both reversed and set aside, and judgment here rendered for Willamar district, but without prejudice to the right of the Lyford district to have any rights and equities which it may have against the Willamar district adjusted under the act of

the First Called Session of the 40th Legislature, 1927, hereinabove referred to.

**CURETON, C. J.**

Judgments of the Court of Civil Appeals and the district court both reversed, and judgment rendered for the defendant in error, as recommended by the Commission of Appeals.