CITY OF DEER PARK ET AL V. STATE OF TEXAS EX REL. SHELL OIL COMPANY AND SHELL CHEMICAL COMPANY

No. A-4330. Decided March 24, 1954.
Rehearing overruled July 21, 1954.
Second motion for rehearing granted January 5, 1955.
Rehearing overruled March 2, 1955.
(275 S.W. 2d Series 77)

*Townsend, Major & Carrigan* and *Dale R. Major,* all of Pasa-

dena, *Willis E. Gresham,* of Houston, *Graves, Dougherty & Greenhill* and *J. Chrys Dougherty,* all of Austin, for petitioners.

The Court of Civil Appeals erred in holding that the City of Deer Park's acceptance of the provisions of Chapter One to Ten, inclusive, of Title 28 R.C.S. was not in substantial compliance with Article 961 entitling the city to annex territory under Article 974; also in holding that a unanimous vote of the town council, upon motion duly seconded, does not comply with the status and that Article 971 restricts the power of subsequent annexation granted under Article 974. Spears v. City of San Antonio, 110 Texas 618, 223 S.W. 166; State ex rel Oil Operators Trust v. Hellman, 120 Texas 282, 36 S.W. 2d 1002; State v. City of Waxahachie, 81 Texas 626, 17 S.W. 348.

*Burke Holman,* County Attorney for Harris County, for the State; *R. H. Whilden* and *Barksdale Stevens,* for Shell companies, *Vinson, Elkins, Weems & Searls, David T. Searls* and *Jack D. Head,* of Houston, *Moody & Robertson* and *Dan Moody,* of Austin, for respondents.

The annexation ordinance of the City of Deer Park was invalid and void under Article 971, Revised Civil Statutes which prohibited a city or town from including within its corporate limits a superficial area of more than two miles, when such city has a population of less than 2,000 inhabitants, and because the property involved had no resident inhabitants and the signers of the petition were not authorized to sign same, and the adoption of only a part of a title of the statute was not a compliance with Article 961 so as to entitle a town or city to annex territory. Trimmier v. Charlton, 116 Texas 572, 296 S.W. 1070; Popham v. Patterson, 121 Texas 615, 51 S.W. 2d 680; Cochran v. Wool Growers Central Storage Co., 140 Texas 184, 166 S.W. 2d 904.

MR. CHIEF JUSTICE HICKMAN delivered the opinion of the Court.

This is a proceeding in quo warranto brought by the State of Texas through the Criminal District Attorney of Harris County on the relation of Shell Oil Company and Shell Chemical Company, hereinafter called respondents, to test the validity of an ordinance passed by the City Council of the City of Deer Park on February 5, 1952, whereby it was sought to annex property of the respondents to the city. The trial court decreed the ordinance to be invalid and permanently enjoined the members of the City Council and their successors in office from enforc-

ing same and from taking any further steps in the future to include the property of the respondents within the territorial limits of the city. The Court of Civil Appeals struck from the judgment the provision enjoining the city from taking any action in the future to annex the property of respondents, and, as thus reformed, affirmed the trial court's judgment. 259 S.W. 2d 284.

Deer Park was incorporated on December 17, 1948, under the provisions of Chapter II of the Revised Statutes, entitled "Towns and Villages" (Article 1133 et seq., as amended). Its area at that time was 448 acres and its population approximately 800. Article 961, Revised Statutes, provides, in substance, that a town or village accepting the provisions of Title 28 relating to cities and towns in the manner therein specified "shall be known as a city or town, subject to the provisions of this title relating to cities and towns, and vested with all the rights, powers, privileges and immunities and franchises therein conferred."

At a regular session of the City Council on February 21, 1949, it was voted that Deer Park should accept "the provisions of Chapters One to Ten, inclusive, Title 28, Vernon's Revised Civil Statutes of the State of Texas; said chapters beginning with Article 961 and ending with Article 1132 of said statutes." Thereafter, on September 2, 1950, the city extended its limits by annexing an additional 315 acres. The ordinance under attack in this suit was passed on February 5, 1952. By that ordinance the city undertook to annex approximately 1050 acres of land, not exceeding one-half mile in width, adjoining the city on the north, south, and west. Some of that property belonged to respondents. In passing the ordinance the city proceeded under the provisions of Article 974, Revised Statutes, which authorizes any city incorporated under or accepting the provisions of Title 28 to annex adjacent territory to the extent of one-half mile in width. Whether or not Deer Park had the authority to annex territory under the terms of that Article depends upon whether it validly accepted the provisions of Title 28, as provided in Article 961.

The first question for decision, therefore, is whether or not Deer Park validly accepted the provisions of Title 28 and thereby became vested with the powers of a city. We find it unnecessary to consider and decide the questions ably discussed in briefs pro and con on the regularity of the proceedings of the City Council in accepting the provisions of Title 28, for the reason

that, since the application for writ of error was granted by this court, the Attorney General has called our attention to a validating act of the 51st Legislature at its First Called Session in 1950, Chapter 22 (Acts 51st Legislature, First Called Session, Chapter 22, page 85, carried forward in Vernon's Texas Civil Statutes as Article 974d-2). In general the Act validates all cities and towns of 5,000 inhabitants or less which have functioned as incorporated cities or towns since the date of their attempted incorporation. Section 2 of the Act validates the boundary lines of such cities and towns covered by the original incorporation or any subsequent extension thereof, and Section 3 validates all governmental proceedings of such cities and towns. That Act removed any question as to the validity of the proceedings in connection wtih the acceptance of the provisions of Title 28 under Article 961 or as to the boundary lines of Deer Park as they existed on the effective date of the Act. It is unnecessary to discuss that Act in detail, for the reason that respondents do not question in their reply brief and did not question in oral argument that the Act must be given that effect. It follows that, if there were any irregularities in the proceedings for changing the status of Deer Park from a town or village to that of a city, they have been cured by the validating act. We shall, therefore, rest our decision of this question upon that Act without determining whether, independent of the Act, we would hold the proceedings valid.

This brings us to a consideration of a later validating act. The 53rd Legislature at its Regular Session in 1953 enacted Chapter 177, carried forward by Vernon's Texas Civil Statutes as Article 966c, reading in part as follows:

"Section 1. All cities and towns in Texas of five thousand (5,000) inhabitants or less, heretofore incorporated or attempted to be incorporated under any of the terms and provisions of the General Laws of the State of Texas, whether under the aldermanic or commission form of government, and which are now functioning or attempting to function as incorporated cities and towns, are hereby in all respects validated as of the date of such incorporation or attempted incorporation; * * *.

"Sec. 2. The boundary lines of all such cities and towns, including both the boundary lines covered by the original incorporation proceedings and by any subsequent extension thereof, prior to the effective date of this Act, are hereby in all things validated.

"Sec. 3. All governmental proceedings and acts performed by

the governing bodies of such cities and towns and all officers thereof since their incorporation, or attempted incorporation, are hereby in all respects validated as of the respective date of such proceedings and acts.

"Sec. 4. The provisions of this Act shall not apply to any city or town now involved in litigation questioning the legality of the incorporation if such litigation is ultimately determined against the legality thereof."

This Act became effective after the passage of the annexing ordinance under attack. Obviously, if the Act is effective as applied to the City of Deer Park, the ordinance has been validated and the territory involved in this suit legally annexed to the city. Respondents contend that we cannot rest our decisions upon the provisions of that Act because no point of error was assigned with respect thereto, either in the motion for rehearing in the Court of Civil Appeals or in the application for writ of error. They further contend that the Act cannot be given retroactive effect to destroy the vested rights created by the prior judgment in this case. Both of those questions are answered contrary to the contention of respondents by three opinions by the Commission of Appeals released by this court on the same date, January 21, 1931. The cases are: Brown v. Truscott Independent School District, 34 S.W. 2d 837; Desdemona Independent School District v. Howard, 34 S.W. 2d 840; and Pyote Independent School District v. Dyer, 34 S.W. 2d 578. In the first two cases the validating act was passed after they were decided by the Court of Civil Appeals, and in the other case the validating statute was called to the attention of this court during the pendency of a motion for rehearing. Those cases definitely hold that this court takes judicial knowledge of validating acts of the Legislature which become effective during litigation involving the validity of cities or school districts or of governmental acts thereof, without any assignment in the briefs relating thereto. Courts cannot close their eyes to valid statutes, even though the briefs of parties do not refer to them. And, further, those cases are authority for the proposition that until the litigation is finally terminated by this court, no rights have vested which take from the Legislature the authority to pass a validating act.

It is also contended that the validating statute of 1953 is inapplicable in this case because the City of Deer Park, on the effective date of the Act, was involved in litigation questioning the legality of its incorporation. It is not argued that this liti-

gation questions the legality of the original incorporation. The argument is that Section 4, providing that the statute should not apply to any corporation involved in litigation questioning the legality of its incorporation, if such litigation is ultimately determined against the legality thereof, relates not only to the original incorporation but as well to subsequent annexation of territory. We cannot adopt that view. To annex territory to a city is not to incorporate the city. The statute validated governmental proceedings and acts, and certainly annexation of territory and the fixing of boundaries thereof are governmental proceedings and acts.

Finally, it is argued that the caption of the 1953 validating statute is insufficient to give notice that one of its purposes was to validate annexation proceedings and boundary lines of territory brought into the city by annexation. The caption reads in part as follows:

"An Act validating the incorporation of all cities and towns of five thousand (5,000) inhabitants or less, heretofore incorporated or attempted to be incorporated under the General Laws of this State; validating the boundary lines thereof; validating governmental proceedings and acts; * *." Art. 966c-note. Vernon's Civ. Stat.)

In our view that caption was quite adequate to give notice that governmental proceedings and acts were to be validated, and, as stated above, annexation of territory and fixing of the boundaries of territories annexed are governmental acts. The case of State ex rel. Armstrong v. City of Gladewater, 242 S.W. 2d 650, 652, is direct authority for upholding the sufficiency of the caption in this case. This question was set at rest by our refusal of the application for a writ of error in that case. The caption which was there held sufficient reads as follows:

"An Act validating the incorporation of all cities and towns of five thousand (5,000) inhabitants or less, heretofore incorporated or attempted to be incorporated under the General Laws of Texas; validating the boundary lines thereof; validating governmental proceedings; * * *." (Art. 974d-2 note. Vernon's Civ. Stat.)

We overrule the contention that the caption is insufficient.

Our conclusions are: That the Legislature can validate any proceeding which it could have authorized in the first instance; that the incorporation of cities and the method of annexation

of territory thereto are legislative questions; that the statute of 1950 validated the proceedings whereby the City Council accepted the provisions of Title 28; that the validation was effective from the date of those proceedings; and that the statute of 1953 validated the ordinance of February 5, 1952, annexing the territory in question, and also validated the boundary lines thereof. We, therefore, do not find it necessary to decide whether or not any of the proceedings would have been invalid but for the validating statutes.

It is ordered that the judgments of both the trial court and the Court of Civil Appeals be reversed, and judgment here rendered in favor of petitioner.

Opinion delivered March 24, 1954.

(NOTE: Motion for rehearing overruled July 21, 1954, at which time Chief Justice Hickman filed an additional opinion; Justice Garwood filed a concurring opinion; Justice Griffin, filed a dissenting opinion in which Justices Smith and Culver joined. All of these opinions on rehearing were later withdrawn as shown by the following opinion.)

MR. JUSTICE CALVERT delivered the opinion of the Court. On second motion for rehearing.

Our opinion of July 21, 1954, on motion for rehearing and the concurring and dissenting opinions filed in connection therewith are all withdrawn and the following is filed as the opinion of the Court:

Since our opinion was released in this case, the Legislature has amended Section 4 of the Validating Act of 1953. See Senate Bill No. 10, Acts of the 53rd Legislature, 1st Called Session. As amended, the Section reads:

"Section 4. The provisions of this Act shall not apply to any city or town (now) involved in litigation *at the time of the effective date of this Act (Chapter* 177, *Regular Session, Acts of the* 53*rd Legislature)* questioning the legality of the incorporation *or extension of boundaries* (if such litigation is ultimately determined against the legality thereof)." (Vernon's Civil Stat., Art. 966c §4.)

The words in italics were added by the amendment and the bracketed words were eliminated.

■ When the above language is considered in connection with the caption it is clear that the Legislature intended the amendment to have retroactive effect so as to apply to any city or town involved in litigation questioning the extension of its boundaries at the time of the effective date of the Validating Act of 1953. It is provided in the caption that Section 4, Chapter 177, of the Acts of the 53rd Legislature be amended so as to provide that such Act "shall not apply to any city or town involved in litigation questioning the legality of the incorporation *or extension of boundaries at the time of the effective date of the original Act.*" (Emphasis ours.) In the light of that provision of the caption it is significant that the amendment omitted the word "now", and the purpose in inserting in parenthesis a citation to the original Validating Act of 1953 immediately following the reference to "this Act," becomes clear. The citation clearly evidences that by the use of the words "this Act" it was intended to mean, not this amendment, but the original Validating Act which was being amended. The Legislature intended to accomplish something by the amendment, and if it be not given retroactive effect, it accomplished nothing. Petitioners point out that in the emergency clause it was provided that "this Act shall take effect and be in force from and after its passing," and take the position that such language discloses a clear intent that the amendment be given only prospective effect. We attach no particular significance to that language. Its purpose was to make the amendment effective immediately as an emergency measure, thereby avoiding the usual 90-day period between the passage of an act and its effective date, as prescribed by Article III, Section 39, of our Constitution.

■ The authority of the Legislature to enact this amendment and give it retroactive effect seems clear. Municipalities have no contract right in boundaries, and the Legislature has the same authority to enact legislation decreasing boundaries as it does to validate ordinances increasing boundaries. Lyford Independent School District v. Willamar Independent School District, Texas Com. App., 34 S.W. 2d 854; Dallas County Water Control and Improvement District No. 3 et al v. City of Dallas et al, 149 Texas 362, 233 S.W. 2d 291; McQuillin on Municipal Corporations, 3rd Ed., Vol. 2, Sec. 4.05.

■ Our conclusion is that, since the City of Deer Park was involved in litigation questioning the validity of the extension of its boundaries at the time of the effective date of the Validating Act of 1953, it was excepted from the provisions of that Act by the amendment in question. This brings us to a consideration

of the questions upon which the case was originally briefed before the Validating Acts were called to our attention.

The case reached us on application for writ of error containing three, and only three, points of error. The first and second points challenged holdings by the Court of Civil Appeals that the City of Deer Park had not been legally incorporated. Those points have been settled in favor of petitioner by the Validating Act of 1950 as is pointed out in our original opinion. We proceed, therefore, from the premise that at the time the annexation ordinance was passed Deer Park was vested with all the powers of a city of its class.

The third point contained in the application reads as follows: "The Court of Civil Appeals erred in holding Article 971, limiting superficial area upon original incorporation, also restricts the power of the subsequent annexation granted under Article 974." The clear purport of this point and the argument under it is that whereas Article 971 limited the area of original incorporation to two square miles there was no such limitation of area that might be annexed under Article 974. The history of this litigation will demonstrate that if we should sustain this third point of error, even as we have sustained the first and second points, we would still be compelled to set aside our former judgment and now affirm the judgment of the Court of Civil Appeals.

By its ordinance No. 08 the City of Deer Park, purporting to act under authority given in Article 974, Vernon's Annotated Texas Civil Statutes, undertook to annex approximately 1,050 acres of land, including 440 acres of land owned by respondents and lying north of the La Porte highway and by such highway detached from the remainder of the annexed territory. Article 974 reads as follows:

"When a majority of the inhabitants qualified to vote for members of the State legislature of any territory adjoining the limits of any city incorporated under, or accepting the provisions of, this title, to the extent of one-half mile in width, shall vote in favor of becoming a part of said city, any three of them may make affidavit to the fact to be filed before the mayor, who shall certify the same to the city council of said city. The said city council may, by ordinance, receive them as part of said city; * * *."

The quo warranto proceding filed by respondents attacked the validity of the annexation ordinance on many grounds, one

of which was that the 440 acres was detached from the remainder of the annexed territory and none of the three signers of the annexation petition was a resident of the detached area.

In his findings of fact the trial judge found that the 440 acres "by reason of its location and character of use is detached from and does not constitute a part of the same territory as the property included in Ordinance No. 08 which is located south of the La Porte highway * * *"; and, further, that "The persons who signed the petition for annexation are not inhabitants of that territory * * which is located north of the La Porte highway and owned and occupied by the Relators." The trial court's sole conclusion of law was as follows:

"1. Ordinance No. 08 is invalid and void because the persons who executed the petition for annexation pursuant to which said Ordinance No. 08 was passed are not inhabitants of that territory included in said Ordinance No. 08 which is located north of the La Porte Highway and owned and occupied by the Relators, and said property owned and occupied by Relators located north of the La Porte Highway by reason of its location and character of use is detached from and does not form and does not constitute a part of the same territory as the property included in said Ordinance No. 08 which is located south of the La Porte Highway, and therefore said attempted annexation was not made or done in compliance with the laws of the State of Texas."

Pursuant to the findings of fact and on its conclusion of law the trial court granted the injunction prayed for.

In their brief in the Court of Civil Appeals petitioners had only two points of error. They were as follows:

"First Point

"The Court erred in its holding that the property owned and occupied by Relators located north of the La Porte Highway, by reason of its location and character of use is detached from and does not constitute a part of the same territory as the property included in said Ordinance which is located south of the La Porte Highway within the meaning of the term 'territory' as used in Article 974 of the Revised Civil Statutes of Texas (1925).

"Second Point

"The Court erred in holding the annexation Ordinance in-

valid and void because the persons who signed the petition for annexation pursuant to which Ordinance No. 08 was passed are not inhabitants of that territory located north of the La Porte Highway owned and occupied by Relators."

In their reply brief the respondents had a counterpoint squarely joining issue on the foregoing points, and had three other counterpoints contending that the judgment of the trial court invalidating the annexation ordinance should be affirmed for the additional reasons that the City of Deer Park had not been legally incorporated, and that, if legally incorporated, it had no legal authority to extend its boundaries so as to include more than two square miles of territory. By way of reply petitioners controverted all of these matters. It was on this record and on the issues so joined that the case was submitted to the Court of Civil Appeals.

The opinion of the Court of Civil Appeals set out, in reasonable detail, the stipulated and undisputed material facts bearing on the detached character of the land north of the highway. 259 S.W. 2d 284, 285, 286, 287. In the interest of brevity those facts will not be repeated here. In its opinion the Court then discussed the law bearing on the validity of the original incorporation of the City and its right and power to extend its boundaries so as to include a superficial area of more than two square miles, concluding in respect to these two issues that the city was not legally incorporated, and, even if it was, that it had no authority to so extend its boundaries. It concluded its discussion of these matters with a separate paragraph reading as follows: "In view of all the facts in this case we cannot say the court below erred in decreeing the ordinance in controversy to be invalid. Therefore, we overrule both points of error in the original brief of appellants."

Petitioners' motion for rehearing in the Court of Civil Appeals contained thirteen assignments of error. Ten of the assignments were directed at holdings of the Court of Civil Appeals on the questions of validity of incorporation of the city and extension of its boundaries to include more than two square miles of territory. Assignment No. 8 asserted that "the Court of Civil Appeals erred in overruling appellants' First Point reading as follows: * * * (here the First Point was quoted as it appeared in their brief)." Assignment No. 9 asserted that "the Court of Civil Appeals erred in overruling appellants' Second Point, reading as follows: * * * (here the Second Point was quoted as it appeared in their brief." Assignment No. 13 as-

serted that "the Court of Civil Appeals erred in overruling Appellants' Counterpoint Four, reading as follows: * * * (here their Counterpoint Four, also dealing with the ruling on the detached character of the acreage, was quoted as it appeared in their brief)." The motion for rehearing was overruled without written opinion.

It was with the record in this condition that petitioners presented to this court in their application for writ of error the three points of error heretofore described.

On original submission this court reversed the judgment of the courts below and rendered judgment for petitioners on the sole ground that by separate acts of the Legislature the proceedings for incorporation of Deer Park and the proceedings for extension of its boundaries had been validated. The Legislature then passed the Act quoted in the beginning of this opinion. Upon consideration of respondents' first motion for rehearing we held that the Act was effective to except the Deer Park annexation proceedings from the operative effect of the Validating Act of 1953, just as we have done here and in the same language. We then proceeded to hold by a divided vote (5 to 3), in spite of respondents' protestation that petitioners had assigned no error thereto, that both courts below had erred in holding the annexation proceedings void because of the segregated character of the territory north of the highway.

In their second motion for rehearing respondents insist that irrespective of the merits of the points of error contained in the application, petitioners' right to a reversal is foreclosed by the ruling of the Court of Civil Appeals on the question of the detached character of the area to which ruling they assigned no error and by which they are therefore bound. On more mature consideration we are convinced this position is well taken.

Rule 476, Texas Rules of Civil Procedure, provides, in part: "Trials in the Supreme Court shall be only upon the questions of law raised by the assignments of error in the application for writ of error, * * *."

█ In Railroad Commission v. Mackhank Pet. Co., 144 Texas 393, 190 S.W. 2d 802, 803, this court, speaking through Chief Justice Hickman, said: "The Supreme Court is not clothed with supervisory powers over courts of civil appeals, but in cases which reach it by writ of error its review is limited to questions of law raised by assignments in the application."

■ Where a court of civil appeals' judgment may rest upon more than one ruling made by it the party aggrieved by the judgment must assign error to each such ruling or risk having the judgment affirmed on the ruling to which no error has been assigned. In such situations it is said that the petitioner has waived his right to complain of the ruling to which no error is assigned. Grayce Oil Co. v. Peterson, 128 Texas 550, 98 S.W. 2d 781, 786; London Terrace, Inc. v. McAlister, 142 Texas 608, 180 S.W. 2d 619, 622; 3A Texas Jur., Appeal and Error, § 250. It follows that if the Court of Civil Appeals in this case ruled against petitioners on the "segregation" points before it, the judgment of the Court of Civil Appeals must be affirmed.

The wording of the paragraph heretofore quoted from the opinion leaves no doubt that it ruled against petitioner on these points. It said in words too plain to be misunderstood: "* * * we overrule both points of error in the original brief of appellants." Those were the two points of error, heretofore quoted, which dealt only with the conclusion of the trial court that the ordinance was invalid because it sought to annex 440 acres which, by its character and use, was detached from the territory south of the La Porte highway. The fact that the major portion of the opinion of the Court of Civil Appeals was devoted to a discussion of the law questions raised by respondents' counterpoints did not make its ruling on the segregation points any the less emphatic or any the less final. The holding of the court was not that it sustained respondents' counterpoints making unnecessary a decision of petitioners' points, but that it overruled petitioners' points. Moreover, this action was taken "in view of all the facts" in the case. But few of the facts in the case were pertinent to respondents' counterpoints; almost all of them were pertinent to the detached character and use of the particular 440 acres.

■ It can hardly be said that petitioners were misled by the opinion of the Court of Civil Appeals into believing that the segregation points had not been ruled on. Clear evidence to the contrary is the fact that three of the assignments of error in their motion for rehearing bore directly on these questions. Why these assignments were abandoned in the application for writ of error we cannot know and is immaterial. They were abandoned; and the right of petitioners to a reversal on the error, if any, involved in these rulings was waived. As said by the San Antonio Court of Civil Appeals in Kendall v. Johnson, 212 S.W. 2d 232, 235: "It is the purpose of an assignment of error to point out, segregate and identify the particular ruling or

action of the court which it is contended constitutes reversible error and the effect of the segregation and identification is to waive all other complaints as to all other rulings and actions of the court, unless they are also assigned as error."

The policy of this court has been, and is, to give a liberal interpretation to points of error contained in an application for writ of error to the end that the rights of an aggrieved litigant will be protected against purely technical pitfalls and to discourage the filing of a great number of points of error where a few will suffice, but this policy cannot be carried to the extent of supplying a point of error on a controlling ruling of a court of civil appeals when the petitioner himself has accepted the ruling without complaint. We cannot regard matter contained in petitioners' brief labeled "Petitioners' Post-submission Argument" as though it were included in the application by way of amendment. Tardy amendment of an application does not accrue as a matter of right but only upon motion, with opportunity afforded to a respondent to oppose the amendment, and then only on such reasonable terms as the court may prescribe. Quite often the parties to a case pending in this court each file as many as five or six separate briefs and if we were to regard matters discussed in all briefs as amending an insufficient or defective application for writ of error so as to make it sufficient, we would enter a procedural morass from which we would soon be seeking extrication.

■  We do not regard the error, if any, in the ruling of the Court of Civil Appeals on the points dealing with the detached character and use of the 440 acres as fundamental error which this court may consider and declare in the absence of inclusion in the application of points of error seeking review thereof. The error, if error it be, can hardly be classed, under the record before us, as the type of error "which directly and adversely affects the interest of the public generally" declared to be fundamental in Ramsey v. Dunlop, 146 Texas 196, 205 S.W. 2d 979, 983.

■  The position of respondents here is as simple as this: That no error having been assigned to the ruling of the Court of Civil Appeals on the segregation points, a ruling in itself sufficient to require an affirmance of the judgment of the Court of Civil Appeals, the errors, if any, complained of in the three points of error were immaterial. This is the position they take in their second motion for rehearing. It is not the position they took in their reply to the application for writ of error. Their

failure to take it at that point in the proceedings, however, can hardly be held to supply the petitioners with a point of error which they did not bring forward themselves.

Since our holding is that petitioners have waived their right to complain of the ruling of the Court of Civil Appeals on the points of error dealing with the invalidity of the ordinance because of the detached character and use of the 440 acres, it becomes not only unnecessary but improper to consider the correctness of that ruling.

This decision does not adjudicate that Deer Park is forever denied the right to annex the 440 acres. The judgment of the Court of Civil Appeals specifically preserved the right of the city to take further future action, and the injunction runs only against enforcement of the particular ordinance involved in this case.

Respondents' second motion for rehearing is granted; our judgment of July 21, 1954, overruling respondents' first motion for rehearing and our judgment rendered and entered herein on March 24, 1954, reversing the judgment of the courts below and dissolving the injunction, are set aside, and judgment is now rendered affirming the judgment of the Court of Civil Appeals.

All costs incurred in all courts through March 24, 1954 are assessed against respondents. Costs incurred in this Court since that date are assessed against petitioners.

Opinion delivered January 5, 1955.

MR. CHIEF JUSTICE HICKMAN joined by JUSTICES BREWSTER and GARWOOD dissenting, ON SECOND MOTION FOR REHEARING.

The question of practice and procedure before us for decision is of such great importance that I, who am not in accord with the views expressed in the majority opinion on second motion for rehearing, feel impelled to express my views on that question. That opinion is, of course, faithful to the record, but in my view it interprets the rules of practice and procedure too strictly in the light of the record.

In the first place, I question whether the conclusion of law of the trial court should be regarded as a ground of recovery as distinguished from reasons for its conclusion, which need not be attacked by formal points or assignments when the appeal

attacks the judgment based on undisputed facts. However, if we treat the reasons as a ground of recovery by respondent, it does not follow that the Court of Civil Appeals based its judgment of affirmance on that ground. In our review of this record heretofore it had not occurred to us that the Court of Civil Appeals based its holding on that ground. The opinion of that court did say "Therefore, we overrule both points of error in the original brief of appellants," but it seems clear to me that that was merely a method for disposing of those points, since they had become immaterial under the holding that Deer Park had never become a city with authority to pass the ordinance. Able counsel who filed the application were obviously of that opinion, and respondent's able counsel must surely have been of the same opinion, for in their reply to the application for writ of error they regarded the question of the validity of the ordinance as being before us for review, and they directed their first two counterpoints to upholding the conclusion of the trial court. These were followed by statements and arguments in support thereof. Their brief did not question that the grounds upon which the Court of Civil Appeals based its decision were presented to us for review by the application for writ of error. To make certain that we would consider the ground upon which the trial court based its judgment so that, if we disagreed with the grounds upon which the Court of Civil Appeals based its judgment, we might, nevertheless, affirm the case, they presented the ground of the trial court to us and devoted a major part of their briefs thereto. They now claim that the questions which they briefed, and to which counsel devoted much oral argument, were not before us at all. These considerations make the claim of insufficiency of the application, at least, very doubtful, and that doubt should be resolved in favor of petitioner's right to have its case considered by us.

There is another reason why I am not in accord with the conclusions expressed in the opinion on second motion for rehearing. Promptly after the cause was submitted on oral argument, petitioner filed a brief in this court labeled "Petitioners' Post-submission Argument." It is a formal document containing points just as in applications for writs of error. The fourth point in the brief is as follows: "The issue of whether the territory annexed is 'inhabited' within the meaning of Article 974 is one of law reviewable by this Court." Under that point the precise reasoning upon which the trial court's judgment was based was challenged, with citation of many authorities from this court, with which, it was asserted, that holding is in direct conflict. Under Rule 481, T.R.C.P., an application for writ of

error may be amended at any time when justice requires, upon such reasonable terms as the court may prescribe. While its "Post-submission Argument" was not labeled an amendment, and the court prescribed no regulations regarding its filing, it, nevertheless, was in effect an amended application and the court considered it and based its opinion on rehearing largely upon authority cited under Point 4. The old practice of requiring assignments of error has been superseded by the more liberal practice of presenting points to the court. Point 4, with the statement and argument thereunder, cured any defect, if defect existed, in the application. It thus appears that the ground of the trial court's judgment was presented to us for review by both sides in this case, and it seems to me that we should not at this late date go back and decide that the question had never been before us.

There is still another reason why I cannot agree with the conclusions expressed in the opinion on second motion for rehearing. In Ramsey v. Dunlop, 146 Texas 191, 205 S.W. 2d 979, this court had before it the construction of Rule 476, T.R.C.P., which provides "Trials in the Supreme Court shall be only upon the questions of law raised by the assignments of error in the application for writ of error, * * *." We were called on to determine whether under that rule we could consider questions of fundamental error. After a very careful review of the question we arrived at the conclusion that "an error which directly and adversely affects the interest of the public generally, as that interest is declared in the statutes or Constitution of this State, is a fundamental error." The question there held to be fundamental error which could be reviewed in the absence of any point in the application was one involving the title to the office of County Commissioner, Precinct No. 4, Loving County. We held the question one of public importance and not one involving merely the rights of private individuals, and upon that basis ruled that it could be reviewed as one of fundamental error. The question of the authority of the City of Deer Park to pass the ordinance under review is certainly one of public interest. In fact, it is a governmental question. The City Council in enacting the ordinance acted directly under authority of Article 974, and the consequences of declaring that ordinance invalid are very much more grave than would have been the consequences of permitting to stand an erroneous decision of the question of who had title to the office of County Commissioner in Loving County. If the ordinance under review is held to be void and the judgment of the trial court becomes *res judicata,* the results will be serious. The city of Deer Park is now

a very small city, but we cannot close our eyes to conditions existing in the territory in which it is located. Within a few years its population may well be multiplied several fold and its area expanded to include lands adjacent to that of respondent on all sides, or, at least, the city limits will come within close proximity to its lands. To have an area surrounded by or adjacent to the city without police protection and not subject to taxation by the city is certainly a matter of public concern. While the judgment of the Court of Civil Appeals modified the injunction of the trial court which prohibited any future annexation of the territory in question, its only meaning was that under changed conditions the city could pass a valid ordinance annexing the territory. So long as respondent chooses to have no voters reside on its property the judgment of the trial court will be *res judicata* of the right of the city to annex it against respondent's will. Certainly the Court of Civil Appeals did not hold that the city may now pass a valid ordinance annexing this territory, if no voters reside thereon.

In my view the second motion for rehearing should be overruled and our opinion on the first motion for rehearing, upholding the validity of the ordinance, be not withdrawn.

Associate Justice Walker not sitting.

Opinion delivered January 5, 1955.

Rehearing of opinion on second motion overruled March 2, 1955.