

# THE ATTORNEY GENERAL
## OF TEXAS

AUSTIN 11, TEXAS

WILL WILSON
ATTORNEY GENERAL

November 6, 1957

Honorable Joseph C. Ternus,       Opinion No. WW-296.
County Attorney,
San Patricio County,              Re: Whether or not persons
Sinton, Texas                         residing in area recently
                                      annexed by the City of
                                      Ingleside are residents
                                      of Ingleside and quali-
                                      fied to vote in local
                                      option election on Nov-
                                      ember 9th, which was
                                      ordered prior to annex-
Dear Mr. Ternus:                      ation.

        You have requested our opinion with reference to
the following two questions:

        1.  Whether Aransas Pass has the right to
complete its annexation which was begun on
October 15th without regard to the fact that
Ingleside has later passed annexation ordinances
covering the same land.  If Aransas Pass does
have the right to complete its annexation, it
would necessarily follow that the persons resid-
ing in the area being annexed by Aransas Pass
would not be eligible to vote in the Ingleside
Dry Election on November 9th.

        2.  Whether in your opinion any ordinance
annexing territory to Ingleside which would
increase its superficial area to more than four
square miles is void, and any person residing
in such area to be annexed would not be eligible
to vote in the Ingleside Dry Election.

        From your letter we have determined the following
facts:

        Aransas Pass is a Home Rule city and took
the first step towards annexing the area in
question on October 15, 1957.  On October 16,
1957, the City of Ingleside, a general law city,
started proceedings to annex substantially the
same land, which proceeding has been completed
by the City of Ingleside.  Prior to October 16,

a local option election was ordered for the
City of Ingleside, to be held on November 9,
1957. Ingleside is a city of between two
thousand and five thousand population, and
the recent annexation has increased the area
within the city boundaries to approximately
sixteen square miles.

Ingleside is a general law city, organized under
Chapter 12, Title 28, Vernon's Civil Statutes, and the recent
annexation was made under the provisions of Article 1135,
Vernon's Civil Statutes, which reads as follows:

"Whenever a majority of the inhabitants,
who are qualified voters of any territory
adjoining the limits of any town or village
incorporated hereunder, shall vote in favor of
becoming a part of said town or village, any
three of them may make affidavit to such fact
and file such affidavit with the mayor of said
town or village, and such mayor shall certify
the same to the council of said town or village.
Thereupon, such council may, by ordinance, re-
ceive such inhabitants as a part of said town
or village. Thenceforth the territory so
received shall be a part of said town or village
and the inhabitants shall be entitled to all
the rights and privileges of other citizens and
bound by all the acts and ordinances made in
conformity thereto and passed in pursuance of
this chapter; provided, that the area of no
town or village shall ever exceed that of
cities or towns, as provided for in chapter
one of this title."

In the foregoing statute and particularly the last
clause thereof, which reads "provided, that the area of no
town or village shall ever exceed that of cities or towns, as
provided for in chapter one of this title", the Legislature
intended to impose limitations upon the power of the city or
town after incorporation to increase its superficial area by
annexation of additional territory beyond the limits imposed
upon said cities and towns in Article 971, V.C.S. City of Deer
Park v. State ex rel Shell Oil Co., 259 S.W. 2d 284 (Tex. Civ.
App. 1953) aff'd. 154 Tex.124, 275 S.W. 2d 77 (1954).

Article 971 reads as follows:

"No city or town in this State shall be
hereafter incorporated under the provisions of
the general charter for cities and towns con-
tained in this title with a superficial area
of more than two square miles, when such town
or city has less than two thousand inhabitants,
nor more than four square miles when such city
or town has more than two thousand and less
than five thousand inhabitants, nor more than
nine square miles, when such city or town has
more than five and less than ten thousand
inhabitants. The mayor and board of aldermen,
immediately after they qualify as such officers,
shall pass an ordinance causing an actual survey
of the boundaries of such town to be made accord-
ing to the boundaries designated in the petition
for incorporation and the field notes thereof
recorded in the minute book of such town or
city, and also in the record books of deeds in
the county in which such city or town is situated."

Ingleside is a city of between two and five thousand
population, and its recent annexation would enlarge its area
to approximately sixteen square miles, as opposed to the four
square mile limit placed on it by the provisions of the fore-
going statute.

Under these facts the City of Ingleside was without
authority to make the recent annexation and for this reason the
attempted annexation was invalid. City of Port Arthur v. Gaskin,
107 S.W. 2d 610 (Tex. Civ. App. 1937); Spurlin v. State, 51 C.A.
266, 115 S.W. 130 (1908). It follows that voters living in the
area annexed to the City of Ingleside by the recent annexation
are not legal residents of the City of Ingleside and are not
eligible to vote in the local option election to be held Novem-
ber 9, 1957. Our answer to your second question makes unneces-
sary an answer to your first question.

## SUMMARY

Persons residing in area of
recent annexation to the city of

Ingleside are not legal residents
of that city, and therefore, are
not eligible to vote in the city's
local option election to be held
November 9, 1957.

Yours very truly,

WILL WILSON
Attorney General of Texas

By John H. Minton, Jr.
   John H. Minton, Jr.
   Assistant

and Galloway Calhoun, Jr.
    Galloway Calhoun, Jr.
    Assistant

GC:pf

APPROVED:

OPINION COMMITTEE

Geo. P. Blackburn, Chairman

Leonard Passmore

John Reeves

J. C. Davis, Jr.

REVIEWED FOR THE ATTORNEY GENERAL

By: James N. Ludlum.