Gilbert E. PETERSON et al., Appellants,

v.

GREENWAY PARKS HOME OWNERS ASSOCIATION, Appellee.

No. 16794.

Court of Civil Appeals of Texas.

Dallas.

Oct. 21, 1966.

Rehearing Denied Nov. 10, 1966.

———◇———

Robert B. Payne, Strasburger, Price, Kelton, Miller & Martin and Royal H. Brin, Jr., Ted P. MacMaster, Asst. City Atty., Dallas, for appellants.

Crozier, Sweet & Freeman and William W. Sweet, Jr., Dallas, for appellee.

CLAUDE WILLIAMS, Justice.

Greenway Parks Home Owners Association, designating itself as "a charitable corporation", instituted this action against William Crawford, and a large number of other property owners in Greenway Parks, a subdivision of the City of Dallas, Texas. The action was brought against the named defendants individually and also as a class action against each and every property owner in Greenway Parks. The City of Dallas, a municipal corporation, was made a party defendant by reason of a contingent interest in the property in question. The subject matter of the litigation was a portion of Greenway Parks Subdivision known as Park A, legal title to which is held by the plaintiff association in trust for the property owners in Greenway Parks Subdivision for private park purposes only, subject to the contingent interest of the City of Dallas. Alleging that Park A has not been and is not now suitable for use as a private park

and that it is impractical and improbable that such tract will in the future be used by the property owners in the subdivision as such a park, plaintiff association sought cancellation of the restriction or limitation on the use of Park A and asked to be authorized to sell, lease or otherwise dispose of the property. A number of the property owners appeared and opposed the relief sought, as did the City of Dallas. The Attorney General of Texas intervened on behalf of the public generally. Gilbert E. Peterson, one of the defendants named, filed a cross-action against the plaintiff association, as well as its attorneys and officers, alleging a conspiracy in the collecting of taxes and other assessments and sought an accounting as well as damages. Following a nonjury trial, the court entered judgment in favor of the plaintiff association setting aside and canceling the restriction of the use of Park A as a private park. Such judgment was without prejudice to any contingent right, title or interest which the City of Dallas might have by virtue of dedicatory instruments. It was further decreed that Gilbert E. Peterson take nothing by his cross-action. From this judgment all parties adversely affected have appealed.

## FACTS

By an instrument dated March 12, 1927 which was amended September 28, 1928, F. N. Drane and J. P. Stephenson subdivided into a residential addition a large tract lying north and outside the city limits of Dallas and filed a plat with the County Clerk showing the area in lots and blocks with streets, parkways and parks.[1] Areas within the subdivision are designated as "Park" or "Private Park", numbering some twelve or fifteen in all, and the property in controversy is "Park A", considerably larger than the other parks, and embraces all of the subdivision lying east of the railroad tracks. Attached to the plats is a dedica-

tory statement executed by Drane and Stephenson, reading in part as follows:

" * * * it is expressly stipulated herein that all sidewalks, parks, private parks, parkways, park spaces and walks for entrance to parks are not dedicated to the public but same are in all things reserved in the grantors F. N. Drane and J. P. Stephenson, their heirs, administrators, executors or assigns, and any indulgence of said grantors to the public in regard to the use of same shall never be construed as a prescriptive dedication or grant of any kind or character and same shall be construed as a mere license, revocable at will, excepting that the lot owners in said addition are to have the irrevocable right to use said sidewalks as a private way of ingress and egress from their said property and to construct an entranceway from the curb line of the street which the lot faces, to their lots, but no such entrance is to be constructed from Greenway Boulevard, and excepting further that the property above mentioned herein reserved to the grantors and not dedicated to the public, shall never be used by grantors or their heirs, administrators, executors or assigns, for any other purpose or purposes than those designated on the plat, * * *; provided, however, when and in case the owners of the lots in the several installments of Greenway Parks, shall vote to discontinue the maintenance charge against said lots as provided for in the respective deeds of conveyance from grantors of said lots, then said sidewalks, parks, parkways, park spaces, and walks for entrance to parks, shall be and are hereby dedicated to the public for the respective uses and purposes as designated on the plat, but in such event, spaces designated on the plat as private parks, shall be and vest for the sole use and benefit of the owners of lots abutting on said private parks, respectively."

---

1. That plats are reproduced in the opinion of the Court of Civil Appeals in the case of City of Dallas v. Clark, 306 S.W. 2d 742, and will therefore not be reproduced here but reference will be made to such plats in this opinion.

Simultaneously Drane and Stephenson filed an instrument entitled "Declaration as to Maintenance Fund of Greenway Parks Addition", providing that the Maintenance Fund may be used for the following purposes:

"For lighting, improving, and maintaining the streets, sidewalks, play parks, parks, private parks, and parkways, including all grass in planted areas within the boundaries of said streets, sidewalks and parks; for planting trees and shrubbery and the care thereof; for the care of vacant property, removing grass and weeds; for collecting and disposing of garbage, ashes, rubbish and the like; * * * and doing any other things necessary or desirable in the opinion of the grantors, to keep the property neat and in good order, or which in the opinion of the grantors may be of general benefit to the owners and occupants of the land included in said Installment."

The declaration fixed a maximum annual maintenance charge to be levied against the lot owners and provided that these charges would be secured by a lien upon the lots and payable to grantors annually in advance.

Moreover, said declaration provided that:

"Grantors reserve the privilege and right, at their discretion, to organize or cause to be organized a Greenway Parks Home Owners Association and to transfer, assign and delegate to such Home Owners Association, to be composed of lot owners in said Addition, the handling of said Maintenance Fund, and the right and authority to collect such Maintenance Fund, and to do and perform all of the rights and obligations of the grantors, the Home Owners Association to adopt its own by-laws and to elect its governing board of trustees."

Pursuant to the foregoing provision in the declaration, the Greenway Parks Home Owners Association was formed in 1954 as a nonprofit corporation, providing in its charter that all persons who own lots in the subdivision shall be members. The by-laws provided that the board of trustees do and perform all of the rights and obligations of the original grantors and to acquire title to parks as is vested in the original grantors. Following annexation of the subdivision by the City of Dallas, and fulfilling the obligation with which it is charged within the by-laws of the association, the association brought a trespass to try title suit which was litigated through the Supreme Court of Texas and which resulted in a final judgment vesting legal title to Park A of Greenway Parks Subdivision in Greenway Parks Home Owners Association, without prejudice to any contingent right, title or interest which the City of Dallas might have under and by virtue of the instruments of record affecting the dedication and platting of this addition. Greenway Parks Home Owners Ass'n v. City of Dallas, Tex.Sup.Ct., 312 S.W.2d 235.

The maintenance charge, above described, amounts to about seven thousand dollars per year and the association collected this charge and administered the fund, primarily for upkeep of all parks in the subdivision with the exception of Park A. Contending that Park A, separated from the principal portion of Greenway Parks Subdivision by the railway, is a "barren, unkempt, vacant tract, covered by native grass and weeds", and not used by the property owners of Greenway Parks Subdivision as a park, as well as a lack of sufficient money to maintain the disputed area as a park, the association brought this action seeking to cancel and strike down the dedicatory provision relating to the use of Park A as a private park and to permit the association to sell, lease, or otherwise dispose of the property and use the funds thereby acquired for the benefit of the property owners of Greenway Parks.

## OPINION

In nine points of error, briefed collectively, appellants contend that the trial court erred in removing or canceling the restriction, limitation, or dedication of Park A to use for private park purposes because (1) no valid legal grounds have been established by appellee for such cancellation; (2) the judgment is not supported by any competent evidence of probative force, or (3) the evidence is wholly insufficient, to afford the valid basis for removal of the limitation to private park use nor of canceling the easement of appellants and other property owners in Park A for park use; (4) that the record fails to reveal such a complete impossibility or utter lack of suitability for use of Park A for park purposes as to justify cancellation of the restriction; (5) that the record reveals no such change in the neighborhood as to destroy the reason and purpose of the restriction or dedication; (6) that appellee is estopped from relying upon its own failure to carry out its duties and responsibilities as trustee for the property owners as the basis for destroying their rights; (7) that the record fails to reveal any abondonment or waiver by appellants, or the other property owners, of their rights in Park A; (8) that appellee has no authority in law to sell or power of sale of Park A, even apart from the limitation to park use; and (9) that the removal of the restriction, limitation or dedication effectively destroys the contingent dedication to public use. We agree with appellants that the record in this case does not give legal support to cancellation and removal of the restriction and limitation clearly enunciated in the dedicatory instrument and therefore reverse the judgment of the trial court.

While the record in this case appears to be complex in many respects and contains overtones of antecedent controversies and litigations, it is quite clear that the primary question is one of law: May the dedicatory restrictions on the use of Park A as a private park, and thereafter as a public park, be canceled?

The original dedication of Park A as a private park until a future contingency, and thereafter as a public park, amounted to a binding contract relating to the use of the property in question with each of the 280 or more property owners owning homes in Greenway Parks Addition. It is obvious from the record that some of these home owners favor the cancellation of the dedicatory provision while others, including appellants, strenuously object to such cancellation of the restrictive use of the land. In such case we do not believe that the law will permit a unilateral agreement to abrogate the restriction which is opposed by those who have equal standing as property owners. That appellee association was once in accord with this contention is evidenced by the language of the Supreme Court of Texas in Greenway Parks Home Owners Ass'n v. City of Dallas, 312 S.W. 2d 235:

> " \* \* \* the petitioner [Association] tacitly agrees that such sale [for commercial purposes] could not be consummated so long as any individual property owner asserted his right to object."

The record in this case is replete with testimony of property owners of Greenway Parks Subdivision wherein they unqualifiedly oppose any change or alteration in the restrictive use of the subject property. It must be emphasized that this is not a case where any restriction was placed upon property for one particular use but rather a limitation to one use, that is, the specific use of the land as either private or public park. The reservation of title is in trust for such use and such purpose only. Appellee association admits that it is the "successor to the original grantors, holds legal title to said property as a trustee or in the nature of a trustee for the use and benefit of the owners of the lots in Greenway Parks Subdivision." Thus it finds itself in the position of a trustee bringing suit against the beneficiaries to destroy the very purpose of the trust, since the admitted declaration under which it claims title reserved

this property for private park purposes, and a contingent public park purpose, only.

As a primary ground for eliminating the limitation appellee association asserts that Park A "has not been and is not now suitable for the use of the lot owners in Greenway Parks as a park." In order to defeat the limitation of use of the subject property an extremely heavy burden was imposed upon appellee association by law to establish by competent evidence an absolute unsuitability or impossibility of use of the property as a park. The applicable rule is thus stated in 19 Tex.Jur.2d § 46, p. 232:

"An abandonment of dedicated property occurs when the use for which the property is dedicated becomes impossible, or so highly improbable as to be practically impossible, or where the object underlying dedication wholly fails. An abandonment may also be effectuated by any affirmative act clearly showing an intention permanently to relinquish the use for which the property was dedicated."

The Supreme Court of Texas in Zachry v. City of San Antonio, 157 Tex. 551, 305 S.W.2d 558, dealing with a specific dedication for park use, held that to constitute an abandonment the use for which the property is dedicated must become impossible of execution or the object of the use must wholly fail. Thus, the court said, the fact that a tract of land is not a perfect site for a park is no justification for destruction of the dedication to park use, but rather there must be a complete impossibility or complete failure of the object of the dedication. The court quoted with approval 38 Am.Jur., § 487, pp. 165–166:

"The principle is that all such property is held by the municipality in trust for the use and benefit of its citizens and is dedicated to the use of the public, and the corporation cannot divest itself of title without special authority from the legislature. It is only when the public use has been abandoned, or the property has become unsuitable or inadequate for the purpose to which it was dedicated, that a power of disposition is recognized in the corporation. Thus, a municipal corporation has no power to sell or convey land dedicated as a park, square or common."

It would seem reasonable that such a rule applicable to municipal corporations would be equally binding upon a nonprofit private corporation holding property in trust for a group of landowners dedicated to their use as a park.

Again, the Supreme Court of Texas in Adams v. Rowles, 149 Tex. 52, 228 S.W.2d 849, considered the question of dedication for a specific use and held that as between grantor and grantees a dedication through sale of lots by reference to a recorded plat is not only effective but "irrevocable". Further, the court quoted with approval, the rule appearing in 26 C.J.S. Dedication § 63 a, p. 552, as follows:

"Abandonment occurs where the use for which the property is dedicated becomes impossible of execution, or the object of the use wholly fails. In general, misuser does not constitute abandonment unless the dedicated use becomes impossible; * * *."

The Supreme Court quoted with approval the opinion of the Commission of Appeals in Griffith v. Allison, 96 S.W.2d 74, opinion adopted by the Supreme Court, wherein it is said:

"It appears to be well-settled that an abandonment, even of an easement acquired by purchase, occurs when the use for which property is dedicated becomes impossible, or so highly improbable as to be practically impossible, or where the object of the use for which the property is dedicated wholly fails." (Citing authorities.)

Appellee association was burdened with the task of establishing that the use of the dedicated property had wholly failed or that its use, either past, present or fu-

ture, was so highly improbable as to amount to a total failure of use and therefore abandonment. The record demonstrates that appellee association completely failed to discharge this burden. A careful review of the testimony of appellee's witnesses demonstrates that they said nothing more than that they did not know whether or not Greenway Parks people used the area as a park. They admitted that it was used from time to time as a playground and park, but said they did not know whether the people using it were from Greenway Parks or not. This amounts to nothing more than negative testimony. On the other hand, appellants brought forward many witnesses who testified positively and affirmatively that the area in question was used and is now being used by residents of Greenway Parks and their children for park purposes. Witnesses testified, without contradiction, that the tract was not "barren wasteland" but had some football goal posts, baseball backstops, and had been used for playing games and kite flying by children in Greenway Parks Addition. The testimony of appellee's witnesses that they did not know one way or the other is insufficient to overcome such positive testimony, especially since the burden was upon appellee to show complete and utter abandonment of the area for park use by all of the Greenway Parks residents.

■ While we recognize the rule of law that abandonment of a dedicatory restriction may be established, like any other fact, by circumstances, yet those circumstances must disclose some definite act showing an intention to abandon and terminate the right possessed by the owner thereof. Thus, the Commission of Appeals, speaking through then Commissioner Hickman, in an opinion adopted by the Supreme Court, Dallas County v. Miller, 140 Tex. 242, 166 S.W.2d 922, said:

"The material question is the intention to abandon, and that intention must be established by clear and satisfactory evidence. Mere nonuser of an easement will not extinguish it. 14 Tex.Jur., p. 733, sec. 37, and the cases there cited; 17 Am.Jur., Easements, sec. 144."

The rule, supported by numerous authorities throughout the United States, is announced in 28 C.J.S. Easements § 60(b), p. 725:

"Mere nonuser, for however long, of an easement created by grant is almost universally held not to constitute an abandonment; there must be, in addition, other circumstances clearly evidencing an intention on the part of the person entitled to the easement to abandon his right."

■ That the abandonment of an easement requires the intent to abandon, which must be established by clear and satisfactory evidence, and mere nonuser of itself does not constitute abandonment in the absence of clear and definite proof of intent to abandon, is illustrated by such Texas authorities as Henderson v. Le Duke, Tex. Civ.App., 218 S.W. 655; Perry v. City of Gainesville, Civ.App., 267 S.W.2d 270; and Rosenthal v. City of Dallas, Civ.App., 211 S.W.2d 279.

The record before us is devoid of probative evidence of nonuser of subject property as a park or playground, but to the contrary, the testimony of numerous witnesses is that residents of Greenway Parks and their children continue to make use of Park A. Thus there is no evidence of complete impossibility of such use, nor any complete unsuitability of use. Such being true, there is certainly no evidence of any kind demonstrating an intention on the part of appellants to abandon their rights in the subject property for park use.

Appellee association seeks to uphold the court's decision upon the proposition that there has been such a change in the neighborhood of Greenway Parks Subdivision as to make private park use of Park A impossible. The association alleged that, as trustee, it is obligated to use the property to the most productive and beneficial benefit of the

lot owners of Greenway Parks Subdivision; that Park A now has a substantial value and that the same should be sold or leased for use consistent with the development of the area at the highest and best price obtainable with the net proceeds going into the trust for the purposes as set out in the dedicatory declaration. Though alleging changes as the basis for cancellation of the restriction appellee association has wholly failed to sustain the very heavy burden cast upon it as was pointed out in Lebo v. Johnson, Tex.Civ.App., 349 S.W.2d 744, err. ref. The court there held that in a suit to cancel and permanently destroy restrictions based upon change of conditions the evidence must be viewed with great caution and relief granted only when the facts are established by clear and convincing evidence. The court pointed out that the record in that case affirmatively demonstrated that there was no such radical permanent change within the subdivision which would render the original plan of development incapable of accomplishment.

As stated in 4 A.L.R.2d, p. 1118, the rule is now well settled that a change in the character of a neighborhood as a ground for affirmative relief against restrictive covenants by way of cancellation or modification is available where the change has been so radical as to render perpetuation of the restriction of no substantial benefit to the dominant estate, and to defeat the subject or purpose of the restriction.

■ Appellee association has not brought forward evidence to justify the application of this rule. The record does not establish such a change in the neighborhood as to make private park use of Park A impossible. Greenway Parks was contemplated from the very beginning as a residential area, and it did so develop and so continues today. Appellee's own witness, Strief, testified that he had lived in Greenway Parks since 1953 and that there had been no change in the status or condition of this tract since he first moved there. Appellee's contention that the railroad track, together with hedges along the track, makes the park inaccessible, is not supported by competent evidence. The testimony reveals that the railroad track and hedges do not render the park inaccessible but that the area is easily reached by paths through the hedge and across the track as well as along University Boulevard to the north. Accordingly, we find no evidence, or the evidence is wholly insufficient, to justify the application of the rule of change of condition as being a basis for cancellation.

■ Moreover, the allegation on the part of appellee association that the area is more valuable for business than for residential use, or park use, does not entitle appellee association to cancellation of the restrictions. Hodgkins v. Pickett, Tex.Civ.App., 344 S.W.2d 461; Abernathy v. Adoue, Tex. Civ.App., 49 S.W.2d 476. Our Supreme Court in City of Fort Worth v. Burnett, 131 Tex. 190, 114 S.W.2d 220, 221, has definitely held that in case of dedication for a specific public purpose the governmental unit as trustee has no power to make a contrary or different use of the property, even though the changed use might be more advantageous to the public than the use specified. 26 C.J.S. Dedication § 65.

■ Appellee association's contention, in support of the trial court's judgment, that Park A could not be maintained by it as a park because no funds were available, is completely unsupported by the record. Appellee's witness, William Crawford, who was twice President of Greenway Parks Home Owners Association and a director, himself testified that each year there was money on hand out of the maintenance charges collected over and above that which was spent for the maintenance of the other parks, so that a savings account, amounting to more than twelve thousand dollars in accumulated payments, was opened and maintained. Another witness, a former president of the appellee association, testified that the board had money but just did

not want to use it for maintenance of Park A:

"Q. Well, sir, it had the money available, did it not, now, sir, to spend if it wanted to?

"A. Well, the money was there, but we didn't want to spend it for Park A."

Thus, it is apparent that appellee association finds itself in poor position to assert the position of unavailability of funds to maintain the subject property when it, as trustee for the other lot owners, is admittedly in possession of excess funds on deposit in a savings account. So, by its own failure to use the available money for improvement of the alleged "barren" tract, appellee association has in effect brought about the very condition which it alleges to support its contention that the tract should be abandoned as a park.

 Finally, we agree with appellants, and the City of Dallas, that a removal of the restriction, limitation or dedication to private park use has the practical effect of destroying the contingent dedication to public park use. While the court's judgment, as did the Supreme Court's judgment in prior litigation, expressly recognize the contingent right of the City of Dallas to acquire the subject land for public use as a park, the trial court's judgment would permit sale or lease of the subject property for commercial uses. It is not inconceivable or too speculative to say that the effect of the trial court's judgment in removing the restriction would permit the appellee association to sell the property to a purchaser who would erect high rise apartments, shopping centers or expensive residences on the property. Appellee association's yield from a commercial utilization of the property would obviate the need for a maintenance tax which would then be probably repealed by vote. In such a contingency the City of Dallas would find itself faced with the practical problem of removing expensive and extensive improvements and restoring the property to a park. Thus the future contingent use of the property as a public park has been effectively destroyed by the trial court's judgment.

We find no points of error assailing that part of the trial court's judgment wherein relief is denied appellant Gilbert E. Peterson on his cross-action against Frank I. Brinegar, Lewis E. Grigsby and C. M. Patrick. Accordingly, that portion of the trial court's judgment is affirmed. As to the remainder of the judgment, appellants' points of error are sustained and the same is reversed and here rendered denying any relief to appellee association.

Affirmed in part and reversed and rendered in part.