**CITY OF DALLAS, Appellant,**

v.

**Mrs. Rhea H. CLARK et al., Appellees.**

No. 15288.

Court of Civil Appeals of Texas.

Dallas.

May 17, 1957.

Rehearing Denied Oct. 18, 1957.

H. P. Kucera, City Atty., Charles C. Wells and Arthur Schroeder, Jr., Asst. City Attys., Dallas, for appellant.

Norman R. Crozier, Jr., William W. Sweet, Jr., Leachman, Gardere, Akin & Porter, Henry D. Akin, Dallas, for appellees.

Leake, Henry, Golden & Burrow, Hawkins Golden and Wm. Burrow, Dallas, for amici curiae John M. Stemmons and others.

CRAMER, Justice.

This action was filed by Greenway Parks Home Owners Association against Rhea H. Clark, Louise Timmerman, independent Executrix of the Estate of James W. Clark, deceased, and the Reserve Loan Life Insurance Company of Texas, alleging that the Home Owners Association was, on July 27, 1955 and still is, the owner of all the area east of the St. Louis, Southwestern Railroad bounded by University Boulevard on the north, Loma Alta on the east, Drane Drive on the south, and the Railroad on the west, containing six or seven acres of land more or less, and that its possession was on July 27, 1955 unlawfully entered upon by named defendants who dispossessed it and now withhold possession from it; that such tract of land has been dedicated to park purposes for the benefit of, and equitable title thereto is in, Greenway Parks Home Owners Association and such Association brings this action not only in its

own behalf but as a class action on behalf of all property owners in the Addition.

Rhea H. Clark and Louise Timmerman, Independent Executrix, answered by plea of not guilty, general denial, pled that they have good title to the land and now claim good and perfect title thereto under the ten-year statute of limitation.

The City of Dallas intervened and claimed title to the above described land known as "A Park" by virtue of a valid statutory dedication of such property for park purposes and the filing of a plat or map of Greenway Parks Addition in the Dallas County Clerk's Office by the then owners, F. N. Drane and J. P. Stephenson, on March 12, 1927 on which map or plat "A Park" was dedicated to and for the public at large, and that any attempt in the method or wording of the dedication to retain property rights in "A Park" was and is void as a matter of law; that on March 18, 1942 the Dallas City Council legally annexed Greenway Parks Addition to the City of Dallas and on that date the City of Dallas became the legal owner and custodian of "A Park." That at the time of the dedication of Greenway Parks Addition by Drane and Stephenson and until March 18, 1942, the property in the Addition including the property here involved was not in any municipal corporation or city and no public corporation existed in such location to take title thereto as an organized representative of the public or to take control and administer it for park purposes; that immediately upon the annexation of such property it became and was thereafter under the control, dominion and management of the Park Department of the City of Dallas, which listed it on its rolls as a public park and began its upkeep and maintenance as a park by leveling and grading it, mowing weeds and grass, planting flowers, shrubs and trees, which maintenance has continued; and there have already been established therein park structures, benches, trash receptacles, playground equipment, athletic fields, etc., and the City of Dallas has kept "A Park" open to the public at all times; that a swimming and wading pool was in process of being established, but continued water shortage prevented completion of same; further alleged the Greenway Parks Home Owners Association, by filing a map or plat dedicating this property to the public as "A Park" obtained benefits by the sale of lots with reference thereto to their property and that no representative existed to operate the park before the City of Dallas took charge of it and improved it. Also pled that the predecessors in title to Greenway Parks Home Owners Association, by filing the map or plat dedicating the park property have benefited by the sale of their lots and are now estopped to deny such dedication. Also pled in the alternative that neither the Parks Home Owners Association nor Clark et al. have an action against the other or the City because the City has held as against them peaceful, continuous and adverse possession of "A Park" under a title from and under the State of Texas for more than three years after the cause of action, if any, of the Association or Clark et al. accrued and before the commencement of this suit and their rights, if any, are barred by the three-year statute of limitation; in the alternative by the five and ten-year statutes of limitation, and the City has now acquired a prescriptive title to said land.

Trial was for title and general relief. A trial amendment was filed by the City of Dallas asserting it had come to the attention of the City that a deed mentioned in the stipulation referred to a subsidiary contract between the parties which set out the conditions upon which the deed might become effective and that the Home Owners Association intends to exercise its fullest authority to sell or lease the property to strangers to the title for use for commercial purposes; that such instrument shows conclusively that the Home Owners Association has elected to discontinue the maintenance charge against the property owners and to no longer spend money for such maintenance and upkeep of "A Park." Therefore the dedication plats dated March

12, 1927 and October 3, 1928 have matured and become effective to establish a public dedication of the property in dispute.

The Home Owners Association answered the City's pleading by not guilty and general denial. After trial to the merits, the court entered judgment in favor of the Home Owners Association and "against defendants Mrs. Rhea H. Clark, deceased, subject to a vendor's lien in favor of Mrs. Rhea H. Clark as provided for in a deed dated the 21st day of November 1956 from Mrs. R. H. Clark et al., grantors, to Greenway Parks Home Owners Association, grantee, to the property hereinabove described; Greenway Parks Home Owners Association do have and recover of and from the City of Dallas judgment for title and possession to said property * * * without prejudice however to any contingent right, title or interest which the City of Dallas may have under and by virtue of the provisions of that certain instrument dated March 12, 1927", and an instrument dated October 3, 1928; and taxed the costs, etc.

From the judgment after the trial before the court without a jury (no separate findings of fact or conclusions of law being filed), the City of Dallas has duly perfected this appeal, here briefing ten points of error.

Point 1 asserts error in failure to render judgment for the City of Dallas for title to and possession of the property in dispute because under the 1927 plat of dedication it was provided that the parks were set aside subject to the following limitations: "* * * It is expressly stipulated herein that all sidewalks, parks, private parks, parkways, park spaces and walks for entrance to parks are not dedicated to the public but same are in all things reserved in the grantors F. N. Drane and J. P. Stephenson, their heirs, administrators, executors or assigns, and any indulgence of said grantors to the public in regard to the use of same shall never be construed as a prescriptive dedication or grant of any kind or character and same shall be construed as a mere license, revocable at will, excepting that the lot owners in said Addition are to have the irrevocable right to use said sidewalks as a private way of ingress and egress from their said property and to construct an entranceway from the curb line of the street which the lot faces, to their lots, but no such entrance is to be constructed from Greenway Boulevard, and excepting further that the property above mentioned herein reserved to the grantors and not dedicated to the public, shall never be used by grantors or their heirs, administrators, executors or assigns, for any other purpose or purposes than those designated on the plat, excepting the part known as Block B, which may be used by grantor for field office purposes; provided however, that when and in case the owners of the lots in the several installments of Greenway Parks, shall vote to discontinue the maintenance charge against said lots as provided for in the respective deeds of conveyance from grantors of said lots, then said sidewalks, parks, parkways, park spaces, and walks for entrance to parks, shall be and are hereby dedicated to the public for the respective uses and purposes as designated on the plat * * *"; that said instrument clearly indicates: "(1) The intention to dedicate to the City of Dallas because the addition was platted as 'an addition to the City of Dallas'; (2) at the time of the dedication this property was outside the city limits and no municipal corporation existed to take charge of the public places; (3) the reservations are void as against public policy, and if they were valid at the time of dedication these conditions were abrogated at the time of annexation; (4) the dedication retained only the naked legal title in Drane and Stephenson and the property could not be used for anything else except park purposes; (5) the property owners were given the option in the future to abandon the 'maintenance tax' as set up, by voting to do so, at which time there would be an automatic dedication of the park properties; (6) the proof shows there

never was any money spent for the maintenance of 'A Park' from the time of dedication up to the date of trial which is tantamount to abandonment and resulted in a public dedication; (7) or alternatively, then, such abandonment was accomplished when the property owners in the Greenway Parks Addition voted to be annexed to the City of Dallas and annexation was completed in March 1942; (8) or alternatively, the

contract of sale which was introduced into evidence accomplished this purpose because it is a diversion of the property and in violation of the rights given to the property owners and the public."

The record here shows the instrument and plat dated March 12, 1927, filed for record March 19, 1927, creating the first installment of Greenway Parks. The plat was as follows:

The record also shows the revised plat dated September 28, 1928, as follows: dedicated to the public but the same are in all things reserved in grantors F. N. Drane

In the instrument attached to the plat dated March 12, 1927 it was provided that the streets and avenues shown on the map were dedicated to the public, and "It is expressly stipulated herein that all sidewalks, parks, private parks, park spaces and walks for entrance to parks are not and J. P. Stephensón, their heirs, administrators, executors or assigns"; and as follows: "Provided, however, that when and in case the owners of the lots in the several installments of Greenway Parks shall vote to discontinue the maintenance charge against said lots as provided for in the re-

spective deeds of conveyance from grantors of said lots, then said sidewalks, park spaces, parks, parkways, and walks for entrance to parks, shall be and are hereby dedicated to the public for the respective uses and purposes as designated on the plat."

In 1942 a number of residents within the Addition applied for annexation to the City of Dallas and the City requested the residents of the area involved to vote on the question. The election was favorable to annexation and on March 18, 1942 the area was duly annexed to the City of Dallas and the City has exercised jurisdiction over such territory continuously since that date.

The evidence also shows the City of Dallas at the time considered the park involved here which was located on the other side of a railroad right-of-way from the balance of the land annexed included the land marked "A Park" on the plat in the annexation ordinance.

Under such record it is clear that the parties intended and provided that the lands in such park were reserved to the grantors Drane and Stephenson in 1927, but that they should never be used by grantors for any other purpose or purposes than those designated on the plat unless the owners of the lots in the several installments of Greenway Parks voted to discontinue the maintenance charge against their lots as provided for in their deeds of conveyance and that then all parks would be dedicated to the public for the respective uses and purposes designated on the plat; that such park is now a part of the City of Dallas; and that the City of Dallas is now entitled to collect taxes thereon.

Former Mayor Rodgers testified that the seven-acre "A Park" was at the time of annexation included with the remainder of Greenway Parks Addition on the basis that it was a park. We therefore hold that the park here involved has been dedicated to the public use as a park and the lot owners have lost their proprietary rights thereto

as a park for the use of the lot owners alone. Point 1 is sustained.

■ Point 2 asserts error in the failure of the trial court to render judgment for the City because the various lot owners in Greenway Parks and Mrs. Clark who claims under the developers Drane and Stephenson, are all estopped to challenge the City's title because they agreed that the maintenance tax against the lot owners was to be used for nine purposes, one of which was the care and upkeep of all parks shown on the dedication plat and none of such maintenance tax was ever used for the care and upkeep of "A Park" but that the developers permitted the City of Dallas to expend public money therefor and to treat this property as a park since 1942, grading, draining, policing, paving, pruning trees, etc., and erecting athletic fields thereon, and exempting "A Park" from all taxation during the fourteen-year period without protest from any person who now asserts or alleges an interest in the property. Portions of the record referred to under point 1 are adopted here. In addition, the record shows an agreement between the City and the Park Cities branch of the YMCA under which the YMCA could use the area for athletic games; which agreement, however, was not known to appellees; also that the City did perform some work in "A Park" which was sufficient to show its exercise of jurisdiction of "A Park." Point 2 is sustained.

■ Point 3 asserts error in failing to render judgment for the City for title and possession of such park because the evidence shows Drane and Stephenson provided that the lot owners could discontinue the maintenance tax for care and upkeep of the parks by voting to terminate the assessment, at which time the parks would become the property of abutting owners and in 1942 the lot owners did vote to discontinue the maintenance tax by voting for annexation to the City of Dallas, and the City did

thereafter annex the Addition and placed it on equal footing with other property in the City of Dallas, thereby making the levy of a maintenance tax to support governmental functions unlawful and discriminatory. The record also shows the City is now furnishing all municipal services which are furnished to other properties in the City.

Under such record we hold all ordinances of the City of Dallas are now applicable to such annexed territory and particularly to "A Park" involved here, and have been applicable to such property since the date of annexation. Point 3 is sustained.

■■■ Points 4 and 5 assert error in the trial court's failure to render judgment for the City because (a) the evidence shows the Home Owners, as representing all property owners, entered into a contract on the day of the trial with Mrs. Rhea H. Clark and Louise Timmerman, Executrix, whereby the Home Owners evidenced its intention of selling or leasing this property for commercial purposes and diverting its use from that intended by the developers, in violation of the provisions of the dedicatory instrument of 1927 which provided it could abandon the tax and dedicate the property and also as follows: "* * * and excepting further that the property above mentioned herein reserved to the grantors and not dedicated to the public, shall never be used by grantors or their heirs, administrators, executors or assigns, for any other purpose or purposes than those designated in the plat * * *"; in effect electing to abandon under the terms of the contract the maintenance tax imposed against them for upkeep of "A Park" and brings into effect that provision of the dedication vesting the right and title to the property in the City of Dallas for the benefit of the public; and (b) because Drane and Stephenson under their dedication retained only the naked legal title and the lot owners may use the property only as a park with no right to sell or lease it as they now propose to do. The record as set out under other points is again

referred to and adopted here where applicable. The City having policed "A Park" and performed all other services necessary to show its appropriation thereof, there was sufficient evidence to show the acceptance of same by the City of Dallas. Gilder v. City of Brenham, 67 Tex. 345; Fenzl v. City of Houston, 63 S.W.2d 729, error ref. No formal acceptance was necessary here, however, since there was a clear intention on the part of the City to control all of the area for the purposes for which it was set aside and the contingency upon which the dedication was made has been satisfied. The record shows that the maintenance tax, although difficult to collect, was in fact collected in part between 1927 and 1942, but that none of the money collected was used for the upkeep of "A Park" and as set out above the citizens thereafter voted favorably to its annexation to the City of Dallas which accepted the same by ordinance No. 3333 and duly annexed the same because it was a park, and thereafter improved it so as to make it more suitable for use as a park. Under such record points 4 and 5 are sustained.

Point 6 asserts error in the trial court's failure to render judgment for the City of Dallas for title and possession of "A Park" since it succeeded to all public property when it annexed the same. The record shows the annexation was regular and valid, and the only question is the availability of "A Park" for annexation to the City of Dallas. What we have said under other points is adopted here. They show "A Park" was subject to annexation and that proper proceedings were taken to effect such annexation. Point 6 is sustained.

■■■ Points 7 to 10 assert error in the trial court's failure to award the City title and possession to the property in question since it was undisputed that the title had theretofore vested in the City under the ten-year statute of limitations and the ten-year prescriptive right, both of which matured in 1952, three years before the suit was filed

under the three-year statute of limitation and also under the five-year statute of limitation. Home Owners Association replied that there is no evidence to support the claim of the three, five, or ten-year statutes of limitation. The City answered that the actual possession has been exercised by it since 1942.

L. B. Houston testified that he was familiar with Greenway Parks Addition since it was annexed in the spring of 1942; that the chart or plan dated in 1942 shows "A Park" in Greenway Parks Addition, that in the early years (1942 to 1947) the land was mowed occasionally, the northeast corner was cleared of trees, etc., which constituted a traffic hazard, the balance was cleaned up, trees trimmed, and:

"Q. Now, directing your attention back to the year 1947, what, if anything, was done by the Park Department in that year? A. At that time there was a concentrated mowing program established as a result of having calls from persons residing in the City of Dallas in the area.

"Q. They wanted it—A. They wanted a better job of maintenance done. What we had done up to that time was to do enough mowing to prevent a fire hazard and prevent a nuisance. Considerable of the mowing was just along the edge there.

"Q. All right. Now, in 1947, what, if anything, was decided to be done? A. It was decided to put on a mowing schedule and to do a better job of upkeep to avoid high grass and prevent insects and rodents and to prevent a fire hazard. In addition, there was some complaint because of bad drainage. Water allegedly stood in there and we were asked to do some leveling to overcome that, which we did. * * *

"Q. I will ask you what, if anything, was done with the park between the years 1947 and 1950? A. After that maintenance program was established we did a reasonably good job of keeping the grass down, keeping it leveled, and one time there

was an effort on the part of the public to create a drive down the west side of it along the railroad. We erected barrier posts for purpose of controlling and excluding the traffic to keep—the vehicular traffic, to keep it from running promiscuously over the area. * * *

"Q. I will ask you, Mr. Houston, do you recall when this agreement was entered into between Park Cities branch of the YMCA and the Park Department? A. It was in the fall of 1950.

"Q. And by that it was sought to allow the boys that were members or not, of the YMCA to utilize the property in question in this suit? A. Correct.

"Q. Now, I will ask you whether or not they have so utilized that property since 1950? A. Yes, they have.

"Q. To what extent? A. The contract permitted them, with the approval of the Park Board, to erect certain equipment. Shortly after the contract was executed they did erect a backstop, what is normally known as a backstop. In fact, they erected two backstops for baseball and softball. That is pipe framework with netting to prevent balls from getting past the batter and the catcher. They also erected some football goals and they undertook, after the erection of that equipment, a supervised program of athletics for boys in that community."

There was evidence by other witnesses that the property has since been turned over to the Park Department and maintained as a Park; it is not on the tax rolls of the City; since October 1950 the YMCA has used it continuously as a City Park. Points 7 to 10 are sustained.

For the reasons stated, the judgment of the trial court is reversed and judgment here rendered that the City of Dallas recover title to and possession of "A Park."

Reversed and rendered.

On Rehearing.

YOUNG, Justice.

Points 4 and 5 should be sustained, and to that extent I concur in above opinion. They read:

(4) "The court erred in failing to render judgment for title to and possession of the property in dispute because the evidence shows that the Greenway Park Home Owners Association, which claims to represent the Addition's property owners as a whole, entered into a contract on the day of the trial with the defendants Mrs. Rhea H. Clark and Louise Timmerman, Executrix of the Estate of Jim Clark, Deceased, whereby the Association evidenced its intention of selling or leasing this property for commercial purposes and diverting its use from that intended by the developers, in violation of the provisions of the dedicatory instrument of 1927 by Drane and Stephenson, which provided it could abandon the tax and dedicate the property, and contains this clause: '* * * and excepting further that the property above mentioned herein reserved to the grantors and not dedicated to the public, shall never be used by grantors or their heirs, administrators, executors or assigns, for any other purpose or purposes than those designated on the plat, * * *'; and their actions being in effect an election under the terms of this instrument to abandon the maintenance tax imposed against them for upkeep of 'A Park', and brings into effect that provision of the dedication vesting the right and title to the property in the City of Dallas for the benefit of the public." (5) "The court erred in failing to render judgment for the City of Dallas for title to and possession of the property in dispute because Drane and Stephenson, under their dedication, retained only the naked legal title to the property and the lot owners may use the property only as a park with no right to sell or lease it as they now propose to do."