**Jeff H. SHEPLER, Appellant,**

v.

**Arnold C. FALK, Appellee.**

**No. 11350.**

Court of Civil Appeals of Texas.

Austin.

Dec. 15, 1965.

Rehearing Denied Jan. 12, 1966.

Small, Small & Craig, C. C. Small, Jr., Austin, for appellant.

Black & Stayton, John W. Stayton, Austin, for appellee.

ARCHER, Chief Justice.

Appellant and appellee own adjoining lots located near the shore of Lake Travis in Travis County, Texas. Appellee, as plaintiff below, sought a mandatory injunction requiring appellant to take down a fence appellant had constructed along the extension of their common lot line below the 715 foot elevation, asserting that such fence violated certain covenants, restrictions and reservations of the Lake Shore Ranch Subdivision of which the two properties are a part and also that such fence encroached on the area within the extension of appellee's lot lines below the 715 foot elevation line. Appellee's petition also complained of appellant's floating boat dock and its mooring cables. After a trial before the court without the intervention of a jury, a final judgment on the merits was rendered requiring appellant to remove all of that portion of appellant's fence that lies below the 715 foot elevation and enjoining appellant from maintaining his boat

dock mooring cables and equipment so as to unreasonably interfere with appellee's ingress and egress by boat to the water in front of his property. No motion for new trial was filed and no findings of fact or conclusions of law were made by or requested of the trial court. This appeal is from such judgment and is directed only at that portion of the judgment requiring the removal of appellant's fence.

The appeal is founded on two points:

"First Point: The trial court erred in ordering the removal of that portion of appellant's fence which is below the water line of Lake Travis.

Second Point: The trial court erred in ordering the complete removal of that portion of appellant's fence that is located within the area encompassed by an extension of the sidelines of his lots."

Appellant owns Lots 33 to 36, inclusive, of Lake Shore Ranch Subdivision No. 1, which he purchased in 1957. Appellee owns Lots 31 and 32, which he acquired in September of 1960. A plat of the subdivision is in the record as Plaintiff's Exhibit 1.

The lots themselves extend only to the contour line of the 715 foot elevation, as shown on the subdivision plat. The lot owners have no title or rights in the area between the contour line of the 715 foot elevation and the water line of Lake Travis except such rights and privileges as are established by Paragraph 12 of the Restriction applicable to the subdivision. This paragraph reads as follows:

"The area lying between the water line of Lake Travis as it may exist from time to time and the contour line of the 715 foot elevation, as shown on the plat of Lake Shore Ranch Subdivision No. 1, to which the undersigned now hold title, shall be and the same is hereby reserved for the exclusive use and benefit of the owners of lots in said Subdivision, their families and guests, for picnicing, fishing, bathing, boating and other amusement purposes, and no structures or fences shall be erected thereon which interfere with the full and free use of such area for such purposes by the owners of lots in said Subdivision, their families and guests in common with each other. Each owner of a lot fronting on said 715 foot contour line may, however, install and maintain boat docks, water pumps, and other facilities for his private use within the area encompassed by an extension of the sidelines of his lot to the water line so long as such installations do not unreasonably interfere with access to and along the water line by other owners."

Both properties are extensively improved. Appellant has built a home, a green house and servant's quarters on his lots at a cost of about $40,000.00 and has installed an electric lift that goes down to his boat dock which floats on the waters of Lake Travis. Appellee has built a lake house and other improvements as well as a chair lift which goes down to his floating boat dock, at a cost of approximately $30,000.00.

At the time appellee bought his lots appellant was maintaining a fence along the extension of the common line between Lots 32 and 33 from the contour line of the 715 foot elevation to a steep bluff of about eight feet, the top of which was about at the 680 foot elevation.

As the water level in the lake fell, appellant added more fence to keep the deer from coming around on his property. This fence is located along the extension of the sidelines of appellant's Lot 33 until it reaches a point approximately 94.3 feet from the 623 foot elevation, at which point the fence deviates on to the area encompassed by the extension of the side lines of appellee's lots. The maximum deviation is 13.5 feet at the 623 foot elevation. This fence has a gate in it at the foot of the steep bluff. The fence is substantially on the extension of the common line between Lots 32 and 33 from the 715 elevation down to this bluff.

At the time of the trial the lake was rising and the gate was beginning to get under water. On the day of the trial the water line of Lake Travis stood at elevation 657.12, which was about the base of the steep bluff where the gate is located.

Appellee had a somewhat similar fence along the extended west line of his lots, which he took up shortly before filing this suit.

The land area between the 715 foot elevation and the water level of Lake Travis in front of both appellant's and appellee's lots is a steep incline of from 35 to 40 degrees and the only practical means of traversing this slope down to the water level is by mechanical lifts or stairways.

Appellant takes the position the covenant is applicable only to the opening sentences, reading:

"The area lying between the water line of Lake Travis as it may exist from time to time and the contour line of the 715 foot elevation; * * *" and that this covenant does not concern anything, or create any rights below the water line of the lake; and that fluctuation in the water line was contemplated and that the area subject to the covenant would vary from time to time.

Appellant contends that covenants or restrictions as to the use of property are to be construed so as to give the instrument a just and fair interpretation and cite Stubblefield v. Pasadena Development Co., Tex. Civ.App., 1952, 250 S.W.2d 308. A restriction is not to be enlarged or extended by construction or implications beyond the clear meaning of its terms. Johnson v. Wellborn, Tex.Civ.App., 1944, 181 S.W.2d 839, writ ref.

Appellee asserts that the restrictions apply to the structures in the water as well as on dry land.

The restrictions are of two types, absolute and qualified. The prohibition against fences is absolute, since the restriction provides "No structures or fences shall be erected thereon which interfere with the full and free use of such area for such purposes." The purposes are enumerated and include fishing.

The prohibition against construction of boat docks and other facilities is qualified, providing that such do not unreasonably interfere with access to and along the water line by other owners, and among the activities not to be interfered with are fishing, bathing and boating, all of which involve the use of the water.

The qualified prohibition with respect to boat docks, water pumps and other facilities, is against unreasonably interfering by the installation of marine facilities, which "unreasonably interfere with access to * * * the water line."

We believe that the fence here involved does unreasonably interfere with "access to * * * the water line" that is, access from the water of the cove to dry land.

The trial court found that the fence does "interfere with the use of the area, encompassed by the extension of the side lines of appellee's lot for fishing, etc., and that the fence in the water is an installation that does "unreasonably interfere with access to, and along the water line by" appellee and others.

It is apparent that when the fence was first built it was situated in its entirety on dry land and in part on dry land encompassed by an extension of the sides of appellee's lot.

■ We believe that the trial court was justified in ordering the removal of the structure, and such has in no wise been affected by the rise of the water level of the lake.

The rise and fall of the water level in the cove is impossible to predict. Any fence below the 715 foot elevation is a hazard, in that at anytime a part of the fence may be beneath the water level, and interfere with the full and free use of such area for fishing, etc.

Appellant says that appellee has no actual desire to any of the steep slope between the 715 elevation and the water line in front of appellant's property.

Appellee is not required to show actual damages in order to enforce the restrictions.

Protestant Episcopal Church Council of Diocese of Tex. v. McKinney, Tex.Civ. App., 339 S.W.2d 400, writ ref; Cowling v. Colligan, 158 Tex. 458, 312 S.W.2d 943.

We believe that injunction is the remedy available in this situation and that appellee is injured by the maintenance of a fence that lies partially under the waters of the cove.

The judgment of the trial court is affirmed.

Affirmed.