**VIKING HOMES, INC., et al., Appellants,**

**v.**

**Lee R. LARKIN et al., Appellees.**

**No. 331.**

Court of Civil Appeals of Texas,
Houston (14th Dist.).

March 18, 1970.

Ben Blum, Bailey, Blum & Lipper, Houston, for appellants.

Max Garrett, Houston, for appellees.

SAM D. JOHNSON, Justice.

Deed Restriction case.

This suit was brought by Lee R. Larkin and other residential property owners as individuals and as representatives of all lot owners in a subdivision, against Viking Homes, Inc., its president, R. D. Whitworth and a lienholder, Medical Center National Bank. It was plaintiffs' contention that a dwelling being constructed by the defendants was located in violation of the subdivision's applicable deed restrictions. Plaintiffs prayed for an injunction compelling the removal of the partially

completed residence dwelling. Trial was to the court without a jury. At the conclusion of trial judgment was rendered that the defendants, Viking Homes, Inc., and its president, R. D. Whitworth, remove the structure.

At defendants' request the trial court made original findings of fact and conclusions of law. Thereafter, again at defendants' request, additional findings of fact were made. From the adverse judgment in the trial court defendants Viking Homes and its president Whitworth duly perfect appeal.

The subdivision in question is located in the City of Houston and is known as Sharpstown Country Club Estates, Section III. The pertinent restriction language provided that the building line of no residence should be less than 35 feet from the front property line, 10 feet from the side property line, and on corner lots not nearer than 20 feet from the property line abutting the side street. The structure in issue was located on a corner lot and it is uncontroverted that it violates the restriction language in that it was placed closer to the side street than the applicable 20 foot set back restriction permits. The structure encroaches nine and one-half feet upon the building set back line at its front and approximately five feet at its rear.

At trial, one of the appellees and nine lot owners testified. One or the other of the various witnesses testified as follows: that the violation was obvious, obscured vision, or was an eyesore because it violated the set back restriction. That the restrictions were advertised by the defendants and used by them as a sales tool inducing them and the various property owners to purchase their property. That in purchasing their property reliance had been placed on the restrictions, that reliance was made to protect their investment in their homes (characterized by one as probably the largest that he would ever make), and that the restrictions were a benefit to owning land in the subdivision. That as prospective purchasers it was determined that the City

of Houston had no zoning and that areas having deed restrictions afforded the only protection homeowners have to protect their property.

The president of Viking Homes, R. D. Whitworth, testified that prior to being informed of the instant violation he had never read the restrictions on the subdivision. The vice president, Herbert S. Hobbs, testified that the restrictions on the subject lot were the same as when it was acquired by the defendant but that "we were not aware of it at the time we bought." He further testified the subject structure could not be redesigned so as to be accommodated on the lot, that it could not be moved in that it was built on a slab, and that if the injunction issued the defendants would have to "take it down."

It is uncontroverted that the defendants at all times had constructive notice of the building restrictions. Nevertheless, in applying to the City of Houston for a building permit defendants represented that the structure would not violate deed restrictions applicable to the lot in question and the permit provided for its nullity in the event such representations were false. The slab was thereafter poured on March 20, 1968. Actual notice was received on approximately May 22, 1968 when a letter signed by 25 residential property owners notified defendants that such owners expected and intended to have the subdivision deed restrictions fully complied with in every respect. Immediately following this notification the City of Houston issued a stop work order on the subject premises. At the time such order was received the dwelling had been approximately 60% completed. Exclusive of the lot cost ($6,575) the defendants had expended $11,650 on the structure at the time construction was stopped. It was estimated that to take down or demolish the structure would cost approximately $5,000.

In the first three points of error defendants contend the trial court erred in refusing to find that plaintiffs have suffered no present or future monetary loss by the

completion of the structure, that the trial court erred in its conclusion of law that the plaintiffs were caused to suffer irreparable damage and injury to their property as such conclusion is not supported by its findings of fact, and that the trial court erred in its conclusion of law that the location of the dwelling in question constitutes a substantial violation of the building restrictions as such conclusion is not supported by its findings of fact. These contentions must be overruled. It is to be noted that appellants attack the judgment on points of law and do not contend that the evidence is insufficient to support the judgment or that the court's findings are against the great weight and overwhelming preponderance of the evidence.

It is defendants' contention that the violation in question was the result of an honest mistake, was a mere technical violation of the restrictions and that there was no proof that the other residences would be damaged in any material aspect by the completion of the residence. Defendants, citing Hoyt v. Geist, Tex.Civ.App., 364 S. W.2d 461, no writ hist., contend that the plaintiffs are not entitled to injunctive relief in the absence of a showing of damages and/or irreparable harm or a substantial violation of the restrictions. In Hoyt v. Geist, relied upon by appellants, the Court quotes from Protestant Episcopal Church Council v. McKinney, Tex.Civ. App., 339 S.W.2d 400, writ ref., wherein the Court states:

"The general rule is that to entitle a petitioner to injunctive relief there must be established an actual and substantial injury or an affirmative prospect thereof. 43 C.J.S. Injunctions § 22, p. 439; Smiley v. City of Graham, Tex.Civ.App., 37 S.W.2d 289; Sanitary Appliance Co. v. French, Tex.Civ.App., 34 S.W.2d 673; Gambrell v. Chalk Hill Theatre Co., Tex.Civ.App., 205 S.W.2d 126 (Ref.N.R. E.); Hinton v. D'Yarmett, Tex.Civ. App., 212 S.W. 518.

"However, an exception to the above stated general rule is found in cases holding that a covenant restricting the use of land may be enforced by injunction where a distinct or substantial breach is shown, without regard to the amount of damages caused by the breach, and that in such cases it is not necessary to show the existence of any particular amount of damages or to show that the injury will be irreparable. See 43 C.J.S. Injunctions § 87, p. 585; Evangelical Lutheran Church of Ascension of Snyder v. Sahlem, 254 N.Y. 161, 172 N. E. 455; Johnson v. Mt. Baker Park Presbyterian Church, 113 Wash. 458, 194 P. 536."

We believe it to be apparent from the foregoing that appellee is not required to show actual monetary damages in order to enforce the restrictions. See also Shepler v. Falk, Tex.Civ.App., 398 S.W.2d 151, writ ref. n.r.e.

We would concur in the findings of the trial judge that the erection of the instant structure constituted a "substantial violation" of the restrictions and that the existence of the violations caused plaintiffs to suffer "irreparable damage and injury to their property which cannot be compensated for by monetary damages." Cowling v. Colligan, 158 Tex. 458, 312 S.W.2d 943, (1958). What constitutes a distinct or substantial breach might not always be determined in inches, feet or units of measure. A better understanding is obtained by comparison of the particular violation to the total of the applicable restriction. In the instant case the structure encroaches almost one-half of the entire building set back area. We do not believe this to be inconsequential. It does not approach the de minimis non curat lex maxim, as in Foster v. Bunting, Tex.Civ.App., 19 S.W. 2d 784, no writ hist., where the violation was only six inches. We are of the opinion that a violation constitutes a "distinct or substantial breach" of the restrictive covenant.

It is likewise clear that the mandatory removal of an offending structure is

provided for in this state. Stewart v. Welsh, 142 Tex. 314, 178 S.W.2d 506 (1944); Melton v. Miller, Tex.Civ.App., 391 S.W.2d 568, no writ hist.; Abel v. Bryant, Tex.Civ.App., 353 S.W.2d 322, no writ hist.; Shepler v. Falk, supra; Stanford v. Brooks, Tex.Civ.App., 298 S.W.2d 268, no writ hist.; Dellaughter v. Hargrove, Tex.Civ.App., 40 S.W.2d 253, no writ hist. Here, however, the mandatory removal will result in what must be considered a most substantial loss to the defendants. This also must be evaluated in comparative terms. All of the lots and homes in the subdivision are of comparable size and value. The effects of defendants' violation would be shared by all of the subdivision property owners, each of whom has a very substantial and comparable investment in his property.

Appellants' final point of error is that the court erred in failing to properly balance the equities citing Davis v. Carothers, Tex.Civ.App., 335 S.W.2d 631, no writ hist.; Blythe v. City of Graham, Tex.Civ.App., 327 S.W.2d 800, writ ref., n.r.e.; Hall v. Stevens, Tex.Civ.App., 254 S.W. 610, no writ hist.; Massengill v. Jones, Tex.Civ.App., 308 S.W.2d 535, writ ref., n.r.e. Such cases are factually separated from the instant case and give minimal support to appellants' contention. Appellants' final point of error must be overruled. Appellants call attention to the magnitude of their loss and the hardship that injunctive relief thrusts upon them. While this is, as previously stated, undoubtedly true, it is equally accurate that appellants by their own actions have occasioned the instant substantial violation of the building restrictions. The corner lot building restrictions have remained constant and were fully available to the defendants to be complied with and observed. Defendants sold an adjoining lot without disclosing the existing violation to the purchaser. Both before and after the violation defendants have advertised that prospective purchasers can rely on the subdivision as being protected by the restrictions. Under circumstances offering some comparisons, our Supreme Court stated, "The equities favoring the particular (offending) owner is only one facet of the judicial inquiry. Those equities must be weighed against the equities favoring the lot owners who having acquired their property on the strength of the restriction, wish to preserve the residential character of the area." Cowling v. Colligan, supra, 312 S.W.2d at p. 946.

We proceed to examine the equities, other than those heretofore enumerated, on the part of the various lot owners. The property owners became acquainted, generally, through the efforts of the defendants, with the subdivision's restrictions prior to ownership. Reliance was placed upon the restrictions at purchase. A subdivision civic group was formed to enforce the restrictions and protect their property and their investments therein. Upon determination of the violation the property owners promptly brought notice to the defendants, cooperated with the City of Houston and diligently pursued their remedy in a court of equity. There is no showing or indication but that the property owners used and exercised due diligence in attempting to protect their property. They obtained an early stay of construction by injunction, filed the required bond and secured an early setting and trial of the instant suit. We find no allegation of acquiescence, abandonment, laches, or waiver of rights. There is no showing of changed conditions in the restricted area or around it. The trial court's findings of fact and conclusions of law and the record before this Court make it apparent that the restrictions were a substantial and significant benefit to the dominant estate of the large number of lot owners.

Under such circumstances we are of the opinion that there was a distinct and a substantial violation of the restrictive cove-

nant and that the mandatory injunction for the removal of the structure was not inappropriate. The judgment of the trial court is affirmed.

BARRON, J., not sitting.