W. Harold COLLUM et ux., Appellants,

v.

Henry NEUHOFF, Jr., Appellee.

No. 18246.

Court of Civil Appeals of Texas,
Dallas.

Jan. 17, 1974.

Rehearing Denied March 14, 1974.

D. Ronald Reneker, Geary, Brice, Barron & Stahl, Dallas, for appellants.

Ron Edmondson, Lyne, Klein, French & Womble, Dallas, for appellee.

BATEMAN, Justice.

This is an injunction suit involving building restrictions in a residential area in Dallas. The trial court, sitting without a jury, concluded that appellants W. Harold Collum and wife had violated restrictive covenants affecting their home property and granted to appellee Henry Neuhoff, Jr. the permanent injunction he sought restraining appellants from completing a swimming pool and fence and requiring them to remove the swimming pool and fence from the portion of their property which is within 25 feet of the rear boundary line of their tract. We affirm.

The parties' residences are adjacent to each other, facing north on Wenonah Drive in the First Installment of Greenway Parks Addition, herein referred to as the Addition. A plat showing the layout of the Addition will be found in our opinion in City of Dallas v. Clark, 306 S.W.2d 742, 747 (Tex.Civ.App.—Dallas 1957), rev'd, 159 Tex. 46, 312 S.W.2d 235 (1958), and will therefore not be reproduced here. Both properties are in Block 4; appellee's property is Lot 3 and that of appellants is Lot 4 and the west one-half of Lot 5. The respective chains of title of appellants and appellee begin with the developers of the addition, J. P. Stephenson and F. N. Drane.

The restrictions in controversy here are found in the original deed by which the developers conveyed the Collum property to P. L. Allen. It is dated August 3, 1928 and contains this paragraph:

This conveyance is made and accepted upon each of the following stipulations, restrictions and conditions, which are hereby made *covenants running with the land* and which shall apply to and be *binding upon* the *purchaser and purchaser's* heirs, devisees, executors, administrators or *assigns* . . . . [Emphasis added].

The pertinent restrictions are that no dwelling house or fence shall be erected nearer than 25 feet to the "park line" of said lots. It was also provided that these restrictions shall inure to the benefit of and be binding upon and enforceable by all original purchasers and subsequent grantees of any of said lots.

Appellee's primary ground for recovery was that the construction of the swimming pool and fence were in violation of "negative covenants running with the land at law." He then pled in the alternative that the restrictions in question were imposed as part of a general plan or scheme for the development of the Addition, and that subsequent purchasers of lots in the Addition, including appellants, purchased with knowledge thereof and are bound thereby. The trial court made findings of fact which fully support both independent grounds of recovery, but in their brief appellants attack only the findings with respect to the creation and implementation of a general plan or scheme of development.

Appellee's first counterpoint is as follows:

> The trial court correctly granted judgment for appellee, and such judgment must be affirmed, because same is based on independent grounds of recovery which are fully supported by findings neither attacked nor assigned as error by appellants.

■ We sustain this counterpoint. The findings referred to therein are that the developers of the Addition conveyed the tract now owned by appellants to their predecessor in title by warranty deed dated August 3, 1928, which contains the restrictions here involved; that the said restrictions related to, touched, and concerned both the land granted therein and the land then retained by the grantors, including the adjacent Lot No. 3, now owned by Neuhoff; that the parties to the deed to appellants' predecessor in title intended that the restrictions contained therein be covenants running with the land and binding upon, and enforceable by, their respective subsequent grantees and assigns; that title to both properties passed to the parties by unbroken chains of record title from the said developers of the Addition; that both tracts are bounded on the south by an attractive private park and the south boundary line of appellants' tract is also the "park line" as that term is used in the original deed to their predecessor in title, which park is dedicated to the use and enjoyment of all residents in the block, including appellee Neuhoff.

There being no attack on favorable findings of the trial court on appellee's primary ground of recovery, the points of error relating to his alternatively pleaded ground of recovery become irrelevant. *Lane v. Davidson,* 31 S.W.2d 1094, 1095 (Tex.Civ.App.—Austin 1930, no writ).

In their Points of Error Nos. 1–6 and 14 appellants urge us to reverse the judgment on grounds that appellee failed to carry his burden of proving the creation and implementation of a general plan or common scheme of development of the Addition and that the restrictions sought to be enforced are part of that plan. They argue that appellee was under that burden even though the restrictions be covenants running with the land at law. Thus the issue is sharply drawn and squarely presented, as to whether such a plan or scheme is necessary to establish a covenant running with the land at law.

The Texas authorities have long recognized the distinction between "real" and "personal" covenants. Those in the first category are said to run with the land *at law,* while a "personal" covenant is often referred to as an equitable "reservation" or "servitude" which may be binding upon successors in interest even though the traditional *legal* test of Spencer's case, 77 Eng.Rep. 72 (K.B.1583), are not met. *See* Montgomery v. Creager, 22 S.W.2d 463 (Tex.Civ.App.—Eastland 1929, no writ); Missouri, K. & T. Ry. v. State, 275 S.W. 673, 677–679 (Tex.Civ.App.—Austin 1925, writ ref'd), cert. granted, 271 U.S. 653, 46 S.Ct. 483, 70 L.Ed. 1134 (1926), but vacated, 275 U.S. 494, 48 S.Ct. 82, 72 L.Ed. 391 (1927); and Anderson v. Rowland, 18 Tex.Civ.App. 460, 44 S.W. 911 (Austin 1898, no writ).

These distinctions are treated extensively, if not exhaustively, in Williams, Restrictions on the Use of Land: Covenants Running with the Land at Law, 27 Tex.L. Rev. 419 (1949). As the author says, there are "two separate and distinct doctrines of covenants, with somewhat different theories, requirements of creation, and means of enforcement and termination." *Id.* at 420. The court, in Montgomery v. Creager, 22 S.W.2d, at 466, said:

> It is true that equity recognizes a kind of covenants which do not run with land, but are nevertheless binding upon subsequent owners of property who acquire same with notice.

■ The key to enforceability of equitable covenants against subsequent owners is

the fact that they took with notice of the covenant or servitude. Williams, *supra,* at 438. Some of the Texas cases, decided subsequently to Professor Williams' said article and other related writings,[1] which have generally recognized these distinctions are listed in the margin.[2]

Appellee introduced evidence to prove his case, and received favorable judgment, on both theories. The establishment of a general plan or common scheme of development would be relevant only to the equitable servitude theory. Moreover, such a plan or scheme is only one of several circumstances showing the intention that successors in interest are to be bound. Hooper v. Lottman, 171 S.W. 270, 272 (Tex.Civ.App.—El Paso 1914, no writ). We hold that a general plan or common scheme of development is not essential to establish a covenant running with the land at law.

Appellants and their grantor are charged with notice of the restrictions on the use of their land. Smith v. Bowers, 463 S.W.2d 222, 224 (Tex.Civ.App.—Waco 1970, no writ). In fact, appellants' own deed recites that it is accepted subject to any and all restrictions of record affecting the property. Their grantor could not convey to appellants a greater or better title than he owned. Brite v. Gray, 377 S.W.2d 223 (Tex.Civ.App.—Beaumont 1964, no writ). These restrictions were real covenants running with the land, and the lot owned by appellee and his predecessors in title was intended to be benefitted thereby. That this was a sound and proper basis for the judgment, as found by the trial court, is not challenged by appellants. Therefore, the judgment must be affirmed. Deer Park v. State, 154 Tex. 174, 275 S.W.2d

77, 84 (1954); Magee v. Cavins, 197 S.W. 1015 (Tex.Civ.App.—Amarillo 1917, no writ).

In their Points of Error Nos. 7, 8 and 11 appellants contend that it was error for the trial court to conclude that the swimming pool constitutes a violation of the restrictions and to order removal of the pool and the fence. They argue that swimming pools are not prohibited by the restrictions and that their "rights" to maintain a pool on their property and to comply with a valid city ordinance requiring the fence around it are superior to and take precedence over appellee's rights under the setback restriction with respect to the fence.

We do not agree with this argument. The judgment does not prohibit the building of a swimming pool and fence on appellants' property; it does not forbid compliance by them with city ordinances relating thereto. Their right to do both is undisputed. They could not build the pool without surrounding it with a fence, under the applicable city ordinance, and it was the fence *within 25 feet of the park line* which was forbidden by the restrictive covenant and the judgment. Appellants' Points of Error Nos. 7, 8 and 11 are overruled.

By their Points of Error Nos. 9 and 10 appellants complain of the trial court's failure to make certain additional conclusions of law. The court made all necessary findings of fact and conclusions correctly disposing of all ultimate issues raised by the pleadings and the evidence. It is obvious from the record which restrictive covenant is violated by construction of the fence, and in our opinion no additional conclusion relating thereto, or

1. Restrictions on the Use of Land: Conditions Subsequent and Determinable Fees, 27 Tex.L. Rev. 158 (1948); and Restrictions on the Use of Land: Equitable Servitudes, 28 Tex. L.Rev. 194 (1949).

2. *See* Ortiz v. Jeter, 479 S.W.2d 752, 759 (Tex.Civ.App.—San Antonio 1972, writ ref'd

n. r. e.); Painter v. MacDonald, 427 S.W. 2d 127, 135 (Tex.Civ.App.—Austin 1968), reversed on other grounds, 441 S.W.2d 179 (Tex.1969); Nicholls v. Barnett, 374 S.W.2d 770, 772 (Tex.Civ.App.—Austin 1964, writ ref'd n. r. e.); Blasser v. Cass, 158 Tex. 560, 314 S.W.2d 807, 809 (1958).

with respect to the fence ordinance, is necessary. It is the enforcement of the restrictive covenant, not the city ordinance, which is in issue here. Points 9 and 10 are overruled.

◼ Appellants' Points Nos. 12 and 13 relate to alleged error of the trial court in balancing the equities between the parties. When a violation of a restrictive covenant is shown the plaintiff is entitled to injunctive relief against such violation. Bible Baptist Church v. Ireland, 480 S.W.2d 467, 472 (Tex.Civ.App.—Beaumont 1972, no writ), cert. den., 411 U.S. 906, 93 S.Ct. 1529, 36 L.Ed.2d 195 (1973); Shepler v. Falk, 398 S.W.2d 151, 154 (Tex.Civ.App. —Austin 1965, writ ref'd n. r. e.); Protestant Episcopal Church Council v. McKinney, 339 S.W.2d 400, 403 (Tex.Civ.App. —Eastland 1960, writ ref'd). It is no defense for the covenant breaker merely to show that his harm ensuing from an injunction is greater than the harm which the plaintiff will suffer by the denial of injunctive relief. Cowling v. Colligan, 158 Tex. 458, 312 S.W.2d 943, 946 (1958). Points 12 and 13 are also overruled.

The judgment is affirmed.

GUITTARD, Justice (dissenting).

Although I agree that the existence of a general plan of development is not essential to establish a covenant running with the land at common law, I do not agree that such a plan is relevant only when enforcement of a restrictive covenant is sought on an equitable servitude theory and under that theory is only a circumstance showing an intention that successors in interest should be bound. In my view, a general plan of development may concern also the inducement and consideration for the covenant and thus may be relevant to the enforceability of the restriction, even though the covenant may satisfy all requirements of a covenant running with the land.

If a restriction imposed by a covenant in one isolated deed burdens the land in question for the benefit of the grantor's adjoining land without any indication of a corresponding benefit to the burdened land, then I would agree that no general plan need be established. See Thomson v. Dozier, 168 S.W.2d 319 (Tex.Civ.App.—El Paso 1942, writ ref'd w. o. m.). In such a case the conveyance itself is presumably the entire inducement and consideration for the restriction. On the other hand, if the restriction is intended as part of a general plan of development of a subdivided tract, then the inducement and consideration for the restriction may be presumed to include the mutual benefits expected from imposition of similar restrictions on other lots in the subdivision. Hooper v. Lottman, 171 S.W. 270 (Tex.Civ.App.—El Paso 1914, no writ). Consequently, if those benefits are never realized because no similar restrictions are imposed on any other lots, it would be inequitable to enforce it by the drastic remedy of mandatory injunction, even though the restriction may qualify technically as a covenant running with the land.

Whether the particular restriction is an isolated covenant or part of a general plan of development should be determined according to the intention of the parties at the time of imposition of the restriction. The primary evidence of that intention is the language of the deed imposing the restriction. In the present case the language imposing the restriction on appellants' lot was clearly intended as part of a general development plan. The original deed from the developers to appellants' predecessor in title describes the land as a certain lot and part of another in "the First Installment of Greenway Parks, an addition to the City of Dallas." It contains various restrictions besides the setback requirement now in controversy, including limitation of buildings to single-family residences, minimum cost of construction, specification of types of materials to be used for houses and fences, and approval of building plans by

the grantors or by a commission appointed by the grantors. The deed recites that the purpose of these requirements is "to cause this Installment to develop into a beautiful harmonious, private residential section." Provision is made for an annual charge to be assessed against the lot for the purpose of creating a maintenance fund for the addition, and release of the restrictions is authorized at certain intervals by owners of not less than two-thirds of the lots in the installment. The restrictions are not imposed for the sole benefit of grantors' remaining land, but are expressly made to inure to the benefit of all purchasers and subsequent grantees of any lots in the addition.

There is no evidence, however, that the restriction with respect to fences within twenty-five feet of the rear boundary of appellants' lot was part of the plan as actually implemented. The deed to the original purchaser of appellee's adjoining lot contains no such restriction, and, so far as this record shows, no other lot in the entire subdivision is so restricted. I think it would be inequitable to grant appellee a mandatory injunction requiring appellants to remove their fence, and, consequently, the swimming pool that cannot legally be maintained without the fence, unless appellants would be entitled under the facts shown to similar relief against appellee or other lot owners.

The theory on which courts of equity enforce against later purchasers restrictive covenants which, though not covenants running with the land at common law, are part of a general development plan is that an earlier purchaser, no less than a later purchaser, relies on the plan to impose similar restrictions on other lots. 2 American Law of Property § 9.30 (1952). Similar reasoning would deny equitable relief to a later purchaser if the earlier purchaser relies on a plan of similar restrictions on other lots, but those restrictions were never imposed, even if the restriction would otherwise be enforceable against him as a covenant running with the land.

The controlling question is not the existence of a common-law covenant running with the land, or which deed was the earlier, but the propriety of the extraordinary equitable relief of mandatory injunction.

No authorities have been cited which I consider contrary to this view. It seems to me to be supported by Humphreys v. Ibach, 110 N.J.Eq. 647, 160 A. 531, 85 A.L.R. 980 (N.J.Ct.Err. & App.1932), in which the facts were similar to those here. There complainants sued to quiet title to their lots as against restrictions asserted by defendants, who owned lots in the same subdivision. The complainants had purchased their lots from the developer several years before the lots purchased by defendants. Each of the earlier deeds contained building setback requirements and restricted the number of dwellings on each lot, and the deeds provided that these covenants should run with the land and be enforceable by other owners of property in the neighborhood deriving title from the same grantor. The later deeds to defendants included similar, though not identical setback restrictions, but varied with respect to the number of dwellings allowed. The vice chancellor issued a decree upholding the setback restrictions, but refused to enforce those concerning the number of dwellings. His reasons are stated in an opinion which was approved and adopted on appeal. The existence of a general neighborhood plan, he said, was a question of fact, and he found various indicia of such a plan. Accordingly, he held that in order for the restrictions to be enforced they must be generally uniform. He did not require them to be identical, and he presumed that the variation between a 60-foot setback along one street and a 75-foot setback along another was reasonable in absence of any evidence to the contrary, but he found no justification for the lack of uniformity concerning the number of dwellings permitted. On this latter point his reasoning seems applicable to the case now before us:

The reason that uniformity is required is to afford to each lot owner a protec-

tion equal to the restriction. It would be inequitable to restrain an owner from building two houses on his lot when his neighbor is at liberty to build two on a similar lot. The plan and the protection it gives to those who have made their homes on the tract in reliance thereon fail only so far as the plan is inequitable. Beyond that, it remains valid and enforceable.

Although the restrictions in that case appear to have met the requirements for covenants running with the land, the court made no reference to that theory or to the theory of equitable servitudes and was concerned only with the requirement of reasonable uniformity in enforcing a restrictive covenant which appeared to be part of a general plan for development. In my opinion, this approach is sound and should be followed here. Respectfully, I submit that our decision should not turn on use of the ancient words "covenant running with the land" in the petition, or on the chronology of the original conveyances. The propriety of equitable relief should be determined by the intentions of the parties to the original transactions as evidenced by the language in their deeds. It is clear to me that the restrictive covenant now before us was not intended as an isolated burden on the lot now owned by appellants, but rather as a part of a general plan of development for which appellants' predecessor, and appellants as well, were justified in expecting mutual benefits, and without a showing that such benefits were realized by implementation of the plan, the covenant should not be enforced against them. Accordingly, I would hold that appellants' point complaining of appellee's failure to establish implementation of the plan is applicable to appellee's theory of covenant running with the land as well as to his alternative theory of equitable servitude.

In response to the motion for rehearing, appellee argues that the general plan of development, of which the covenant here involved appears to have been a part, is shown to have been implemented in other deeds by various covenants not relating to fences. He insists that restrictions in a general plan need not be uniform to be enforceable. I concede that complete uniformity is not required when there is a valid general plan, but I do not agree that other and different restrictions would necessarily justify enforcement of the restriction here in question. In my view, a restrictive covenant should not be enforced unless it is shown to be a part of the plan as actually implemented. If appellants' lot is the only lot subject to a restriction on fences within twenty-five feet of its rear boundary, and no reason is shown why such a restriction has any relevance to a general plan without a corresponding restriction on other lots, I would presume that the original purchaser accepted the restriction in expectation that a corresponding restriction would be imposed on other lots. I would not presume that he was content with assurance that other lots would have restrictions that had no relation to fences. If all other owners are free to build fences within twenty-five feet of their rear boundaries, and no reason appears why this restriction on appellants' lot alone would further the general plan of development, then I do not think that a court of equity should enforce such an isolated and unrelated restriction. That is the situation in this case, if my interpretation of the record is correct. Denial of enforcement of this restriction would not prevent enforcement of the plan to the extent actually implemented. *See* Humphreys v. Ibach, 110 N.J.Eq. 647, 160 A. 531, 85 A.L.R. 980 (N.J.Ct.Err. & App.1932), above discussed.

For the reasons given I would reverse the mandatory injunction and remand for further proceeding so that the facts in this respect may be fully developed. I do not reach appellants' alternative contention that balancing the equities requires reversal of the decree, and I express no opinion on that question.

ON MOTION FOR REHEARING

BATEMAN, Justice.

In their motion for rehearing appellants contend that there was no evidence, or in the alternative insufficient evidence to show: (1) that any other lot owner in the Addition had had a fence set-back restriction imposed upon him, or (2) that the purported restrictions in question are a part of or referable to a general plan or common scheme of development, or (3) that a general plan or common scheme of development contemplating the fence set-back restriction was ever implemented. Appellants contend further that our holding is against the great weight and preponderance of the evidence. Appellants argue that there is no evidence or finding that fence set-back restrictions are mutual as between these parties, or as among any of the property owners in the Addition. Appellants point out that, insofar as this record shows, theirs is the only property in the Addition to which the said fence restriction applies, and that it would be inequitable to require them to remove their swimming pool and surrounding fence in the absence of any showing that any other property owner in the Addition was subject to the same restriction.

It is undisputed that the original developers, Messrs. Drane and Stephenson, did in fact represent and promise the establishment of a general plan or common scheme for the development of the Addition as "a beautiful, harmonious private residential section." It is also undisputed that such a general plan or common scheme was thereafter implemented and appellants' property thereby benefited in that the Addition was developed as a beautiful, harmonious private residential section, and that it remains as such to the present time, some forty-six years after its original adoption. The "implementation" of the plan was shown by proof of many circumstances and actions of the developers and the various property owners in the Addition for many years past; among them the preparation and recording of a plat of the development by Drane and Stephenson, the restriction of certain areas for residences, certain areas for private parks and certain areas for streets, the levy of an assessment against all lot owners for joint maintenance for common areas, the ownership by more than 300 lot owners in the Addition, all succeeding to the title formerly owned by Drane and Stephenson, the formation of an association of these lot owners to attempt to insure compliance with the restrictions in the subdivision, the association's employment of an architect to insure that proposed construction and improvements will comply with the restrictions, and the litigation by the association of the validity of the restrictions, which were upheld by the courts as recently as 1966, as shown by the opinion of this court in Peterson v. Greenway Parks Home Owners Association, 408 S.W.2d 261 (Tex.Civ.App.—Dallas 1966, writ ref'd n.r.e.).

■ Having concluded that the plan or scheme was implemented, we must determine whether the fence set-back restriction was included in the implemented plan. There was evidence that a violation of this particular restriction would interfere with the appellee's enjoyment of the common parkway, which also was part of the general plan or common scheme as implemented. It is our view that this evidence, coupled with all the facts and circumstances in the record, was quite sufficient to support the trial court's findings concerning the adoption and implementation of a general plan or common scheme of development which included the particular restriction in question. We also hold that such findings were not against the great weight and preponderance of the evidence.

■ Our analysis of the circumstances evidencing implementation of the plan also disposes of the question of *mutuality* of the set-back restriction, since this particular restriction should properly be viewed in context with the other restrictions which

also were part of the plan or scheme. The fact that appellee did not have a similar set-back restriction, or that some other residents may not have had one, is not conclusive. All the residents received a mutual benefit from the implementation of the plan or scheme for this beautiful, harmonious private residential section. The fence restriction here involved was a very minor part of the general restrictions as implemented. The set-back restriction was no more important to the overall development than, for example, the joint maintenance fee, the public parks dedication, the minimum frontage requirement, the single family restriction, the requirement for directional facing of homes, the advance approval of building plans, the specification of building materials, the maximum height restrictions, the minimum living area restriction, the curb line setback restriction, the location of driveway entrances, or the specification of materials for fence construction. Would it be equitable to permit appellants, whose property has been benefited for many years by a general plan or common scheme, to violate this restriction merely because the appellee has not shown that one relatively minor element of the plan or scheme applied to, and was enforced uniformly against, each resident in the Addition? We think not.

Appellants' motion for rehearing is overruled.